# MARCH, 1922

GEORGE F. HORNSBY v. THE STATE.

No. 6444. Decided March 1, 1922.

1.—Murder—Indictment—Name of Defendant—Alias—Pleading.

Where defendant was described in the indictment as George F. Hornsby, alias George H. Scott, and defendant suggested that his true name was George F. Hornsby and sought to have the alias, George H. Scott, eliminated from the indictment, and the court refused to comply with such request, under articles 559 and 560, C. C. P., there was no error under the facts of the instant case, it being relevant to prove that the defendant went by the name of George H. Scott.

2.—Same—Evidence—Bills of Exception—Question and Answer Form.

This court has, on various occasions expressed the opinion that transcribing the stenographers notes in question and answer form was not a compliance with the law prescribing the requisites of a bill of exceptions or statement of facts. Following Ferguson v. State, 83 Texas Crim. Rep., 373, and other cases; however, when the bills are considered they present no reversible error.

3.—Same—Evidence—Corroboration of Accomplice.

Upon trial of murder, where corroboration of accomplice testimony was necessary, there was no error in admitting testimony of the wife of the deceased to the effect that her husband failed to appear at his usual time on the evening of the homicide, at the time that the state claims by accomplice testimony that he was killed in defendant home.

4.—Same—Evidence—Flight—Corroboration.

Where the testimony of the accomplice, a boy, showed that during the flight of the defendant, a man, and the witness they had a conversation with certain parties at a certain place, there was no error to introduce these parties as witnesses, to testify that they saw at said place and time the man and the boy, and that they rode to Abilene with them. This was corroborative of the accomplice's testimony.

5.—Same—Evidence—Corroboration—Identification of Defendant.

In view of the testimony of the accomplice identifying the defendant, and the testimony of the State's witness that the accomplice companion gave

his name as George H. Scott, there was no error in admitting testimony that several days after the homicide a man and a boy came to witness' home together, the boy giving his name as Willie Carter and the man claiming to be George H. Scott, although the witness was not able to identify the defendant.

6.—Same—Evidence—Identification of Defendant—Collection of Notes.

Where, upon trial of murder, Myrtle Chambers, while living with the defendant, had purchased with him on credit some furniture, both going under the name of Scott and had executed a note in part payment thereof, and placed the furniture in the house of defendant, there was no error in admitting the testimony of the vendor of said furniture, that on the afternoon of the day of the homicide he went to the home of defendant to make a collection on the note and that while there he saw the defendant.

7.—Same—Evidence—Circumstantial Evidence—Facts Not Disputed.

When the body of the deceased was found there was blood on his hat. and there was a blanket and quilt on the ground near the body which was taken by the undertaker; the body was examined by a doctor who described the wounds and condition of the body in detail, etc. There was no error to permit the undertaker, who brought the body to describe the condition of the wounds, and that there was blood upon the blanket and quilt. This was not a disputed fact.

8.—Same—Evidence—Practice in Trial Court—Character of Witness.

Where Myrtle Chambers, witness for the defendant, testified, among other things, that while in Brownwood, after the homicide, she had entered the plea of guilty for illicitly living with the defendant, there was no error in permitting state's counsel to ask the witness if she had pleaded guilty to living in adultery with defendant; besides, the question was withdrawn.

9.—Same—Evidence—Efforts of Officers to Arrest Defendant—Flight.

Where, upon trial of murder, the State proved flight both by the testimony of the accomplice and the witnesses corroborating him, and the defendant proved the offer of reward, there was no error in admitting the testimony of the officers that they caused to be printed and distributed circulars descriptive of the defendant, etc., in order to ascertain his whereabouts, Following Bennett v. State, 47 Texas Crim. Rep., 53.

10.—Same—Continuance—Want of Diligence—Second Application—Depositions.

Where, upon trial of murder, the depositions of defendant's witnesses were returned on the 7th day of March, a week before trial, and but five of the witnesses' depositions were taken, and defendant filed an application for continuance for the want of the return of the depositions of three other witnesses, but showed no further effort after the first depositions were filed to secure said additional depositions, the same was a want of diligence and the application is correctly overruled. Following Speights v. State, 41 Texas Crim. Rep., 323, and other cases. Besides, the application was the second application for continuance and the absent testimony was only cumulative.

11.—Same—Sufficiency of the Evidence—Death Penalty.

Where upon trial of murder, inflicting the death penalty, the evidence was sufficient to sustain the conviction, there was no reversible error.

12.—Same—Rehearing—Indictment—Name of Defendant—Alias.

While the statute provides that one who is indicted under another name than his true name may suggest that fact and thereupon the true name will be inserted in the indictment, yet under the facts of the instant case, where

it was shown that defendant had been going under another name than his own, and this fact existed in such connection as that it was provable as a part of the development of the case against the defendant, there was no error that he was indicted under his own name and also the other name used by him as an alias, and there was no reversible error in the refusal to eliminate such alias.

13.—Same—Continuance—Second Application—Want of Diligence—Depositions.

Where the return showing failure to obtain the depositions of certain witnesses for the defense was filed a week or more before the date of trial, and the trial itself occupied many days, but defendant made no further effort to secure such depositions, there was no error in overruling his second application for continuance; besides, the absent testimony was only cumulative. Following Goode v. State, 57 Texas Crim. Rep:, 223, and other cases.

Appeal from the District Court of Bell. Tried below before the Honorable M. B. Blair.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Sam D. Snodgrass*, for appellant.—On question of indictment in not eliminating alias: Roberts v. State, 201 S. W. Rep., 998; Chadwick v. State, 232 id., 842; Popinaw v. State, 107 id., 350; Myatt v. State, 21 id., 256.

On question of depositions and motion for continuance: Ball v. State, 72 S. W. Rep., 384; Phillips v. State, 34 id., 272; Maples v. State, 14 Texas Crim. App., 134; Stegar v. State, 105 S. W. Rep., 789; McDonald v. State, 216 id., 166.

On question of assumed name: Yantis v. State, 94 S. W. Rep., 1019; Casey v. State, 102 id., 725.

*R. G. Storey*, Assistant Attorney General, *W. U. Farley, T. C. Wilkinson, Lewis H. Jones*, and *A. L. Curtiss*, for the State.—On question of want of diligence; and motion for continuance: Dean v. State, 29 S. W. Rep., 477; Wells v. State, 145 id., 950; Johnson v. State 59 Texas Crim. Rep., 425; Woodward v. State, 58 id., 412; Hart v. State, 51 id., 509; White v. State, 60 id., 463; Florence v. State, 61 id., 238; Edwards v. State, 172 S. W. Rep., 227; Oliver v. State, 70 Texas Crim. Rep., 140.

On question of corroborative testimony: Gocher v. State 148 S. W. Rep., 574; Arnold v. State, 168 id., 122; Grimes v. State, 178 id., 523, and cases cited in opinion.

MORROW, Presiding Judge.—The appeal is from a judgment condemning appellant to suffer death for the murder of J. N. Weatherby.

The body of the deceased, who apparently had been dead twelve or fourteen hours, was found about seven and a half miles from the town of Brownwood on the 19th of October, 1920.

Willie Carter, an accomplice, testified that the appellant killed the deceased on the 18th day of October, put the body in an automobile belonging to deceased and deposited it at the point where it was found.   This accomplice also testified that he and appellant remained in company with each other for about eight days after the homicide, when they separated in Fort Worth, Texas.

Appellant testified that he left Brownwood on the morning of the 15th of October and went to Oklahoma City, leaving there on the night of the 16th, arriving at Little Rock, Arkansas, at noon of the 17th, at Memphis on the following morning, and at Birmingham, Alabama, at one o'clock P. M., October 19th, where he remained until his arrest.

Appellant was described in the indictment as George F. Hornsby, alias George H. Scott.   In a timely manner he suggested that his true name was George F. Hornsby and sought to have the alias George H. Scott eliminated from the indictment.   Complaint is made of the refusal of the court to comply with this request.   When the name of the accused is not correctly set out in the indictment, Articles 559 and 560 of the Code of Crim. Procedure designate the method of having the indictment state the true name.   There are instances of reversal for failure to comply with the law.   Myatt v. State, 31 Texas Crim. Rep. 524; Popinaw v. State, 52 Texas Crim. Rep. 409.   The language of the statute is:

"If the defendant, or his counsel for him, suggests that he bears some name different from that stated in the indictment, the same shall be noted upon the minutes of the court, the indictment corrected by inserting therein the name of the defendant as suggested by himself."

In the instant case, the name suggested was George H. Hornsby. That name was in the indictment, but there was stated also therein the name of George H. Scott.   Whether the statute in question applies to a like situation has never, so far as we are aware, been decided.   From Mr. Bishop's work on Criminal Procedure, Vol. 2, Sec. 681, we quote:

"If it is uncertain which one of two or more names will appear in the evidence as the defendant's, the method is to give both or all, connected by an alias dictus; as, John Richardson, late of, etc., laborer, otherwise called John Baldwin, late of, etc.   Thereupon proof of one will sustain the allegation."

From Chitty's Criminal Law, Vol. 1, page 203, we take the following:

"It has been holden that a defendant cannot be described with an alias dictus of the Christian name, but a man may be described by a second surname, if laid under an alias. . . .   But if the defendant plead misnomer of his surname, the prosecutor may reply, that the defendant is known as well by one name as the other, though it is said to be the best and most usual practice to allow the plea, as the

defendant must set forth his right name therein, and a new and more regular indictment may be immediately preferred against him, and he will be concluded by his own averment."

It is also said in a note that the doctrine that an indictment alleging two Christian names, one being under an alias, is unsound for "admitting that a person cannot have two Christian names at the same time, he may be called by two such names, which is sufficient to support a declaration or indictment."

The evidence was conclusive that prior to the homicide, the appellant lived in Brownwood with a woman named Myrtle Chambers to whom he was not married, and that he went by the name of George N. Scott and she as Myrtle Scott. Willie Carter, her brother, was a member of the family. A short time before the homicide, appellant and the woman went to Fort Worth together. She went to Oklahoma and he, according to the state's evidence, returned to Brownwood. The homicide took place in the absence of the woman and, according to Willie Carter, the deceased was killed by the appellant in the house in which appellant lived.

In the development of the case, it was essential that the fact that the appellant went under the name of George H. Scott be proved. It would have been admissible whether charged in the indictment or not. The statute does not, in terms, apply to a case where the accused has two names, or has actually gone under two names. It being relevant, in this case, to prove that the appellant went by the name of George H. Scott, we are of the opinion, in view of the authorities cited, that there was no error in refusing to eliminate the alias from the indictment.

There are several bills of exceptions reserved to the admission of testimony which are not prepared in a manner to require consideration in that they depart from the mandate of the statute which says that in preparing a bill of exceptions "the objection to the ruling shall be stated with such circumstances or so much of the evidence as may be necessary to explain it and no more, and the whole as briefly as possible." Revised Statutes, Art. 2059. This court has, on various occasions, expressed the opinion that transcribing the stenographer's notes in question and answer form was not a compliance with the law prescribing the requisites of a bill of exceptions or statement of facts. Ferguson v. State, 83 Texas Crim. Rep. 273; Mooney v. State, 73 Texas Crim. Rep., 120; Felder v. State, 59 Texas Crim. Rep. 144; Hargrave v. State, 53 Texas Crim. Rep. 147; Fox v. State, 53 Texas Crim. Rep. 150; Mauney v. State, 85 Texas Crim. Rep. 184.

The bills of exceptions mentioned consisted of the transcribed notes in question and answer form. We have, in view of the character of the case, read the bills. In one of them complaint is made of the testimony of the wife of the deceased to the effect that her husband failed to appear at his usual time on the evening of the homicide to

take supper with her and her children and that she failed to find him at his place of business or elsewhere. We think this testimony was not subject to the objection urged. The deceased was a keeper of a garage. He lived with his family in the town of Brownwood. On the morning of the 19th of the month, his corpse was found, bearing evidence of violence, about seven miles from Brownwood. His automobile was near by. The state introduced evidence that on the previous evening the appellant had enticed the deceased to the home of the appellant and there killed him, afterwards taking him to the point at which the body was found. Corroboration of the accomplice, who gave this testimony, was necessary. A circumstance tending to corroborate him was the disappearance of the deceased on the evening of the 18th. The testimony, we think, was relevant and competent upon this subject. That the deceased was not at his home or place of business at the time that the state claims he was killed in appellant's home was not hearsay but was direct evidence tending to prove a relevant fact.

After the homicide and during the flight of the appellant, according to the witness, Willie Carter, appellant and Carter had a conversation with some parties at Buffalo Gap and rode in wagons from that point to Abilene, Texas. After his arrest, Carter was taken to the home of one, Gibson, at Buffalo Gap and he (Carter) testified upon the stand that he recognized Gibson as one of the parties whom he met on the occasion mentioned. Gibson testified as a witness that he saw at Buffalo Gap a man and a boy and that they rode to Abilene, one with the witness Gibson and the other with his brother. This testimony was relevant to corroborate the accomplice Carter touching the flight and the presence of the appellant in Texas at a time inconsistent with his theory that he was in Alabama. In its receipt we are able to discern no departure from the rules of evidence, and have been referred to no authority pertinent to show that it was improperly received.

The same is true, we think, of the testimony of Naomi DeHaven. She resided in Fort Worth, was acquainted with the woman, Myrtle Chambers, had seen her in company with a man giving his name as George H. Scott; that several days after the homicide, a man and a boy came to her home together, the boy giving his name as Willie Carter and the man claiming to be George H. Scott; that she was unable to identify him as the man whom she had previously seen in company with Myrtle Chambers; that on the occasion in question, he inquired the whereabouts of Myrtle Chambers; that she mentioned to them that she had seen in the newspapers an account of the homicide at the house of Myrtle Chambers and they stated they knew nothing of it. The witness Carter testified that he took part in this interview and that appellant was his companion. In view of the testimony of Carter identifying the appellant, and the testimony of the woman, Naomi DeHaven that the boy's companion gave his name

as George H. Scott, we think the objection to the testimony is not tenable. It tended to corroborate Carter in his statement that he and the appellant were together for a number of days after the homicide.

Myrtle Chambers, while living with the appellant in Brownwood, had purchased, on credit, some furniture. She and appellant, going by the name of Scott, had executed a note in part payment of the furniture which was in the house occupied by the appellant. Cook, who sold the furniture, testified that on the afternoon of October 18, 1920, he went to the home of appellant to make a collection on the note; that while there he saw the appellant. The complaint of the receipt of this testimony, we think, is without merit. Appellant's relationship with the woman was a conceded fact, and manifestly the testimony of Cook that he saw the appellant at his home on the day that the homicide took place was available to the state.

When the body of the deceased was found, there was blood on his hat; there was a blanket and quilt on the ground near the body. This was taken by the undertaker. The body was examined by a doctor who was in company with the justice of the peace and others. They moved the body from under the bushes and put it in the blanket and quilt. The doctor, in his testimony, described the wounds and condition of the body in detail. One of the wounds was a gash, four or five inches long, in the base of the skull, which went through the skull; the tissues on top of the head were mashed and the brain showing. He also described a number of other wounds about the head and face of the deceased. In view of the proof of these facts, which are undisputed, the complaint that the undertaker who brought the body in but made no examination of it until after it reached his place of business, and that he described the condition of the wounds and stated there was blood upon the blanket and quilt is without merit. All of the testimony that he gave was cumulative of an undisputed fact proved by other witnesses.

Myrtle Chambers, on behalf of the appellant, testified that she lived with the appellant as his wife; that the appellant went under the name of George H. Scott; that he had changed his name because of dishonorable discharge from the army; that she left Brownwood in company with the appellant on the 15th day of October and went to Fort Worth; that from thence she went to Oklahoma but appellant did not accompany her; that she left Oklahoma City on the 19th of October and soon after she tried to call the appellant at Brownwood and learned that her house had been burned, that the deceased had been killed and that the appellant was missing; that she was arrested on her arrival in Brownwood on the 20th day of October but was later released and returned to Oklahoma City, from whence she wrote to appellant's brother in Birmingham and was told by him that there was a reward of $4,000 offered for appellant. She also testified that while in Brownwood after the homicide, she had en-

tered a plea of guilty for living with the appellant and had obtained money on a note to pay the fine. She also identified the quilt which was found with the body of the deceased as belonging to her. In this state of the record, the fact that one of state's counsel asked a witness if Myrtle Chambers had pleaded guilty to living in adultry with appellant was not reversible error. The question was withdrawn upon objection. It was addressed to a matter, however, that was already in evidence, in substance, without complaint.

Complaint is made of the admission of the testimony of the efforts of the officer to ascertain the whereabouts of the appellant after the homicide. He caused to be printed and distributed circulars descriptive of the appellant, upon which were printed his picture and finger prints and the statement that a reward of $4,000 was offered for his arrest. The complaint, in our judgment, is not well founded. The appellant was arrested in a distant state, something over a month after the homicide. The state proved flight, both by the testimony of the accomplice and the witnesses corroborating him. Appellant proved the offer of reward. Under these circumstances, the evidence mentioned concerning the efforts of the officers to apprehend him was not illegal. Bennett v. State, 47 Texas Crim. Rep. 53.

Appellant was arrested on the 27th day of December. The indictment was found on the 4th day of January following. The case was transferred on charge of venue from Brown County to Bell County, and the trial began on the 15th of March. On the 2nd day of February, appellant obtained a commission to take the depositions of eight witnesses who resided in Birmingham, Alabama. The depositions were returned on the 7th day of March. The return of the depositions was irregular and the officer taking them failed to certify to the identity of the witnesses. Upon these grounds a motion to suppress the depositions was made and sustained. The depositions of but five of the witnesses were taken. The court, during the trial, permitted the appellant to introduce evidence of these five witnesses, all of whom testified to facts supporting his alibi. That is to say, two of them testified that they had seen appellant in Birmingham, Alabama, on the 20th day of October; two of them testified to having seen him there on the 19th and one on the 21st of the month. The officer taking the depositions certified with reference to the other three witnesses that one of them was sick and the other two he understood to be on their way to Texas to give their testimony in person.

An application for a continuance was made and overruled, and complaint of it was made in the motion for new trial. The absent witnesses, it is claimed, would have corroborated appellant's testimony on the issue of alibi, showing that he was in Birmingham, Alabama, on the 20th of October. The State meets the complaint of

the action of the court with reference to the continuance with the claim that the diligence to procure the testimony was not sufficient. Some time after the indictment elapsed before the commission was taken out and considerable time intervened between the issuance of the commissio nand its execution. This the appellant undertakes to explain by testimony and the introduction of letters going to show the of our law in naming the officers who may, in a criminal case, take difficulties in taking the depositions growing out of the restrictions the depositions of witnesses, and also upon the failure of the Governor, upon request of the appellant and his attorneys, to appoint a commissioner to take them. Aside from these preliminary matters, however, it appears that the depositions were filed eight days before the trial began and twelve days before it ended. At the time they were filed, the appellant was charged with notice of the fact that three of the witnesses had not answered. As a predicate for delay of the trial to secure their testimony, it was incumbent upon him to show that he was diligent in his efforts to obtain it after he discovered its absence.

This was the second application for a continuance. It appears affirmatively that it would not have taken more than thirty-six hours for mail to have reached Birmingham. If, when the depositions were filed, appellant had taken some steps to secure the testimony of the absent witnesses, he might have been successful. If, after taking such steps, he failed, he would, at least, have been in a position to insist that he had been diligent in his efforts to obtain their testimony. In the absence, however, of any effort to make use of the days intervening between the filing of the depositions and the date of the trial, or the end of the trial, to get the testimony, we are constrained to the view that he did not show diligence as would authorize this court to declare that in overruling the second application for a continuance and the motion for new trial based thereon, the trial court abused its discretion. We think the case is within the operation of the rule which requires diligence in the issuance of additional process upon learning that the first issued will not result in securing the testimony. This rule is exemplified by many decisions. See Michie's Digest of Texas Reports (Criminal Cases) Vol. 1, p. 105; Speights v. State, 41 Texas Crim. Rep. 323; Hill v. State, 18 Texas Crim. App. 665; Halsford v. State, 56 Texas Crim Rep. 118; Neyland v. State, 13 Texas Crim. Ap. 536; Longacre v. State, 41 S. W. Rep. 629; Henderson v. State, 22 Texas Crim. Rep. 593; Loveless v. State, 40 Texas Crim. Rep. 221.

In considering the action of the trial court in refusing to grant the new trial, note is to be taken of the knowledge of the court at that time of the evidence adduced upon the trial. From appellant's testimony, it appeared that he lived in Brownwood for something over two months with Myrtle Chambers and Willie Carter; that he went by the name of George H. Scott; that on his return to Bir-

mingham, he resumed the name of Hornsby. From Willie Carter's testimony, it appeared that appellant told him he was going to rob Weatherby of a diamond, and directed him to go to the place of business of the deceased and tell him that Carter's sister, Myrtle, wanted to see him; that he obeyed these instructions and when he reached the home of appellant, Weatherby was there, sitting down, and appellant hit him with a hammer several times; that Weatherby said: "Don't kill me;" that after killing him, appellant wrapped him in an old quilt and blanket, and the witness got a mop and and tried to mop the blood off the floor. Appellant then dragged the deceased to the window and the two put the body in the car and then poured "coal-oil" on the house and set it afire. A neighbor heard a noise at the house at the time that Carter claims the homicide took place, and he saw a man make a stroke overhead and a bulk of something on the floor, and shortly thereafter he saw appellant at the door of the house. He saw the Carter boy and also saw the car standing by the house for some twenty minutes and then saw the appellant and Carter get in the car and drive away. About the time the car left, he noticed smoke at the house. The witness Woods testified that he saw the appellant in the house a short time before the homicide, according to Carter's testimony, took place. The two Gibsons identified the appellant and Carter as having been at Buffalo Gap about three days after the homicide. To this the Carter boy also testified. Two witnesses testified to circumstances corroborating the accomplice Carter to the point that appellant was in Fort Worth several days after the homicide.

In view of the record in the case, the trial judge did not, in our opinion, abuse the discretion vested in him by law in refusing a new trial.

The judgment is affirmed.

ON REHEARING.

March 1, 1922.

LATTIMORE, JUDGE.—That we sustained the action of the trial court in overruling appellant's motion to strike from the indictment the words "alias George H. Scott," is seriously urged as error in the motion for rehearing by appellant. We find ourselves unable agree to this contention after more mature reflection. Articles 559-560-567, Vernon's C. C. P., do not apply. As we understand those articles of our statute, one who is indicted under another than his true name may suggest that fact, and thereupon the true name will be inserted in the indictment and the trial proceed. Chadwick v. State, 89 Texas Crim. Rep., 531. Considering the matter as one procedure generally, we are of opinion that if such person has been go-

ing under another name than his own and this fact exist in such connection as that it be provable as a part of the development of the case against the accused, and he be indicted under his own name and also the other name used by him, as an alias, he would no more have the right to have such alias stricken from the indictment he would hve to have removed therefrom any other allegation of a provable fact. We cannot conceive of any rule of reason upon which injury can be presumed to appellant from the fact of his being charged as George F. Hornsby alias George H. Scott. We are deciding this question as applicable to the facts before us and are not announcing a rule which might be applicable where there was one or more aliases stated in a case where the fact of the accused having gone under an assumed name was not connected with the proof of any issue necessarily shown in the development of the case as pleaded.

Said motion also urges that we were wrong in upholding the refusal of the continuance applied for by appellant. This matter has also been seriously considered by us, but we are unable to arrive at a conclusion different from the one heretofore announced. The speedy trial of criminal cases is one of the guarantees of the Constitution and is desirable from the standpoint of the State as well as the accused. It was not discussed in our opinion, but the continuance refused appellant, complaint of which is now under discussion, was the second continuance sought, the first application having been presented in January, 1921, and the application for continuance upon the instant trial having been filed on March 15, 1921. It is argued against the soundness of our conclusion that no diligence was shown to obtain the depositions of the three Alabama witnesses whose testimony was not before the court, that no diligence could have secured their testimony in time for this trial. We are unable to see how appellant or this court could know such fact. As stated in the opinion, the return showing failure to obtain the depositions of said witnesses was filed a week or more before the date of trial. The trial itself occupied many days. Neither appellant nor this court could know that if he had again promptly forwarded interrogatories to Alabama for the taking of the depositions of said witnesses, that the trial court would not have postponed the cause for some days, or that the depositions might not have been taken and have arrived either before the beginning of said trial or during same. Discussing the matter in the light of a second application, we observe that the rule in such case is much stricter. It is stated in many cases that a second application will not be granted for merely cumulative testimony. Vernon's C. C. P., Art. 609, for enumeration of authorities. Appellant had the benefit of the testimony of a number of witnesses who by depositions stated substantially the same facts as he expected from those whose depositions were not obtained. So it is also stated that no presumptions obtain in favor of a second application for continuance, and that it must be shown that the accused is guilty of no laches or

neglect. Goode v. State, 57 Texas Crim. Rep. 223; Deckard v. State, 58 Texas Crim. Rep. 34.

Being unable to agree with appellant that the opinion of the court as originally handed down announced an incorrect conclusion, the motion for rehearing will be overruled.

Overruled.