of matters then or afterward involved in litigation, as a privileged communication."

On the record before us we cannot agree with respondent's contention that the trial court erred in excluding the tendered evidence. We know from our own experience that testimony as to the names of persons present at the scene of an occurrence which thereafter becomes the basis of a lawsuit is often admitted without objection, but that does not mean that a trial court errs when, in the absence of a showing of the relevancy and materiality of such testimony, it excludes it. Respondent has presented no other basis for reversal of the trial court's judgment.

We are not to be understood as holding that respondent could have secured the list of names by complying with the Rules on discovery. It has not been necessary to decide that question.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

See, also, 290 S.W.2d 914.

W. J. BRANNON alias Jim Shannon, Appellant,

v.

The STATE of Texas, Appellee.

No. 28490.

Court of Criminal Appeals of Texas.

Oct. 31, 1956.

Rex Emerson, Odessa, for appellant.

Warren Burnett, Dist. Atty., Odessa, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Presiding Judge.

The offense is a violation of Article 1268a, Vernon's Ann.P.C., which denounces a threat to take life or injure property for the purpose of extorting money from the person threatened; the punishment, 25 years.

The witness Roden, a resident of Odessa in Ector County, testified that on the day before the date alleged in the indictment he began to receive threatening telephone calls from a man who identified himself as "the professor" saying he represented the "Mafia" and stating that he had come to collect $730, which he implied the witness had acquired unlawfully from someone with whom he was connected, and that "his boys" were in Midland to see that the money was forthcoming. Roden immediately notified the Chief of Police of this threatening call and was instructed to simulate negotiations with the person calling in order that the police might apprehend him. During the next two days Roden received several telephone calls from the same person, who made many and varied threats in the jargon of the underworld to take his life or injure his property, among them being that if he did not come up with the money his (the witness') life would not be "worth a plug nickel." Finally, the caller and Roden, acting in compliance with police instructions, agreed that Roden place the $730 in an envelope addressed to "Jack Dragna, c/o Commercial Bank & Trust, San Francisco, California," turn it over to one Holcomb, who was to go to Midland and deliver it to the caller, who would be in a 1955 gold and white Cadillac in front of the Ranch House cafe.

Under the supervision of the police, who had by that time placed the appellant under surveillance, the serial numbers of

the money turned over to Holcomb were noted, and the officers placed themselves in a position to observe the meeting between Holcomb and the appellant in Midland.

Holcomb testified that he met the appellant at the designated place and, upon being told by the appellant that he was "Jack Dragna," turned over the envelope containing the money.

The officers from Odessa and Midland arrested the appellant as he prepared to depart from the meeting with Holcomb, and a search of the Cadillac revealed the envelope containing the money bearing the same serial numbers.

The appellant did not testify in his own behalf; he cross-examined the State's witnesses fully but introduced no evidence in his own behalf.

We find the evidence sufficient to support the conviction and shall discuss the bills of exception and contentions in the order advanced by appellant's able counsel on appeal in his brief.

The appellant was not represented at the trial, having twice refused the court's offer to appoint counsel for him and having assured the court that he had studied law and insisted upon his right to represent himself.

■ Bill of exception No. 1 complains that the court, in response to a motion by the State, instructed the appellant not to question the State's witness Roden about some liquor law felony convictions against him in 1930 and 1937. The evidence did not establish that Roden had been so convicted, but, if it had, we have concluded that the court was eminently correct in holding that these convictions were too remote to be admissible as impeachment of the witness Roden. The first convictions were had 26 years, and the next 19 years, before the trial. Because of their remoteness, these convictions were not admissible for impeachment purposes under the rule announced by this Court in Perez v. State, 141 Tex.Cr.R. 575, 150 S.W.2d 402; Dillard v. State, Tex.Cr.App., 218 S.W.2d 476; Abercrombie v. State, 159 Tex.Cr.R. 417, 264 S.W.2d 727; and Stevens v. State, Tex. Cr.App., 280 S.W.2d 283.

■ Bill of exception No. 2 reflects that the appellant moved the court to strike the words "alias Jim Shannon" from the indictment and that the court failed to respond to such motion. This is a question that has seldom arisen in this State. In Roberts v. State, 83 Tex.Cr.R. 139, 201 S.W. 998, 1000, this Court had before it an indictment which alleged the accused's name to be "Ed Roberts, alias High Pockets." Though the case was not reversed on that point, the dictum would indicate that the Court was of the opinion that the alias should have been stricken. This question was next before this Court in Hall v. State, 158 Tex.Cr.R. 243, 254 S.W.2d 523, in which we held directly that the incorporation of an alias in the indictment was not of such a prejudicial nature as to call for a reversal of the conviction. We have concluded that the Hall case is here controlling and that the court's ruling was here correct. There was no intimation in the Hall case or in the case at bar that the alias was added in bad faith.

■ Bill of exception No. 3 complains of argument wherein the prosecutor told the jury:

"You come here as twelve citizens of Ector County, to sit on the jury in the case of the State of Texas v. W. J. Brannon alias Jim Shannon. You come here as officers of the law. You took a solemn oath in this case. You are in effect today not only in effect but perhaps in actuality the strongest link of law enforcement in this country there is today."

The bill reflects that no objections were taken to the argument. When the appellant twice refused the court's offer to appoint an attorney to represent him, he placed

himself in the same position as if he were ably represented insofar as the necessity of objecting is concerned. If there was anything in the quoted argument which the appellant considered prejudicial, he should have pointed it out to the court and asked that the jury be instructed not to consider the same. We find no error reflected by the bill.

Bill of exception No. 4 also is to argument which is much in the same vein as the preceding bill. The prosecutor merely reminded the jurors that their loved ones and their property were safe because of the work of the officers in combating crime and because the juries were as diligent as the officers. These were general observations and were well within the common knowledge of the average juror.

Bill of exception No. 5 relates to further argument which the appellant contends was a reference to the appellant's failure to testify. We do not so agree. The prosecutor merely reminded the jury of the appellant's many veiled insinuations throughout the trial to the effect that the district attorney was suppressing evidence and that the officers were failing to perform their duty in suppressing certain other crimes in the area. The prosecutor told the jury, as he had told the appellant during the trial, that if other violations of the law in Ector County were going unapprehended there was a place for him (the appellant) to go to report such official misconduct. The prosecutor was obviously referring to the grand jury because he had told the appellant during the trial that there was then a grand jury in session if he wanted to report anything to them.

Bill of exception No. 6 complains that the court allowed him only ten minutes to prepare and submit his additional objections to the court's charge. Many cases might be envisioned where this would constitute reversible error, but let us examine the case before us. The main charge was submitted to the appellant; he made

his objections; and the court re-drew the charge and then handed it back to the appellant. This is when the time for examination was limited. The trial was concluded on March 2, but more than 30 days later, when his attorney on appeal prepared his bill of exception to this action of the court, he had thought of only two objections which he said he would have made if he had been granted time to do so. They will now be discussed: (1) That the charge did not instruct the jury to disregard the second count of the indictment for all purposes. We quote from the charge as given:

"The State has elected to proceed under the first count of the indictment. In arriving at your verdict, you will not consider the guilt or innocence of the defendant under the second count of the indictment as read."

(2) That the charge failed to define the word "extort". In Burleson v. State, 131 Tex.Cr.R. 76, 96 S.W.2d 785, 787, a prosecution such as the one before us here, we said:

"We are not of opinion that the word 'extortion' is of such peculiar legal significance as to require of the court that in his charge he attempt to define same. Our ordinary English lexicons all agree as to the definition of said word, which is not, as we have said, of peculiar legal significance, though cases might arise calling for some definition of said term."

We have concluded that no injury has been reflected by the action of the court in this respect.

Bill of exception No. 7 complains of another situation that would probably never arise except in a case like the one at bar where the accused insisted upon his right to defend himself without the aid of counsel. When the State rested, we find the following:

"Mr. Brannon (the appellant): Do I address the jury?

"The Court: That means you may make an announcement to the Court if you wish to rest at this time. In all fairness to you, I believe you want to question some witnesses again.

"Mr. Brannon: Yes, sir.

"The Court: The Court suggests that you call those witnesses at this time.

"Mr. Brannon: I do not get to address the jury on what I expect to do?

"The Court: Yes, sir, you do, but this is not the time."

One State's witness was recalled by the appellant and testified. The appellant then requested a recess because of his physical condition, and a recess until the next morning at ten o'clock was granted. When court convened, and in the absence of the jury, the court asked the appellant what he had meant by his question set out above and at that time learned that the appellant had referred to an opening statement and not the argument to the jury. The court promptly offered to give the appellant an opportunity to make an opening statement and then call any such witnesses as he desired, but this offer the appellant declined.

We fail to perceive any possible injury to the appellant from this misunderstanding.

The appellant next complains of the failure of the court to instruct a verdict of not guilty because of a variance in the indictment and the proof. The indictment described the threat as follows: "That the said Tom Roden's life would not be worth anything if he, the said Tom Roden, did not deliver the money as instructed." When Roden testified, he stated that the threat had been that his "life wouldn't be worth a plugged nickel unless I came up with this money."

We are at a loss to perceive a fatal variance and overrule the appellant's contention.

We find the indictment to have been drawn in accordance with Willson's Criminal Forms, Sixth Edition, Form 1703, page 351, and overrule the appellant's contention that it was insufficient to apprize the appellant of the charge against him.

Finding no reversible error, the judgment of the trial court is affirmed.