Willie Delores TOLER aka Willie Dee Carrier, Appellant,

v.

The STATE of Texas, Appellee.

No. 52567.

Court of Criminal Appeals of Texas.

Jan. 26, 1977.

Rehearing Denied Feb. 16, 1977.

Sexton, Watson & Sexton, Orange, for appellant.

Jim Sharon Bearden, County Atty., Orange, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is from a conviction for delivery of heroin. Punishment was assessed by the jury at life imprisonment.

Three of appellant's grounds of error relate to the court's jury charge and three relate to the admission and exclusion of evidence.

While the sufficiency of the evidence is not challenged, a brief recitation of the facts will put the grounds of error in better perspective.

Joseph Payne, deputy sheriff of Calcasieu Parish, Louisiana, testified he was working as an undercover agent in Orange County on September 25, 1974. He related that about 8:15 p. m. he went to 306 South Farragut and purchased $50.00 worth of heroin from Andrew Carrier. Appellant was present in the house at the time. He returned to the same address at about 10 p. m. and appellant answered the door. He asked for three "papers." Appellant let him inside the house and gave him three "papers" for $75.00. He stated appellant was alone at the time.

Deputy sheriff Jack Hebert of Calcasieu Parish was in the trunk of Payne's car. He testified that at 10 p. m. Payne left the car and came back after a while. They drove to a Holiday Inn and met other officers, and Payne produced heroin he did not have previously.

Deputy sheriff John Wade, Jr. of Orange County, with officer Duhon, followed Payne in another automobile. Wade observed Payne enter the house in question about 10 p. m. and later leave. He met Payne and Hebert at the Holiday Inn, and Payne produced three packets of heroin he did not have before going to the house in question.

The chain of custody of the packets was established, and the chemist Blalock testified that each packet contained heroin.

Testifying in her own behalf, appellant denied the delivery of heroin to Payne. She stated Payne had come to the house where she was living with Andy Carrier on several occasions but was always with a heroin addict named Charles Morris. She admitted that she had been a heroin addict for two years and that Carrier had been giving her free heroin.

■ Initially appellant contends the court erred, despite objection, in refusing to strike the alias name "Willie Dee Carrier" from court's charge to the jury even though at arraignment she had suggested her correct name of "Willie Delores Toler." Appellant contends that the alias name implied a meretricious relationship and prejudiced her in the eyes of the jury.

The indictment returned named the appellant as "Willie Dee Tolar AKA Willie Dee Carrier." At arraignment appellant suggested her correct name was "Willie Delores Toler" in accordance with Articles 26.07 and 26.08, Vernon's Ann.C.C.P. The indictment and other records were ordered corrected accordingly, but we do not find that the alias was struck from the indictment.[1]

On cross-examination of Payne he referred to the appellant as "Willie Dee," and inquiry was made about her last name, which Payne testified was "Toler alias Carrier." Appellant's counsel asked, "Why the alias?" Payne replied she was supposedly living with Carrier "or was married to him." Hebert and Wade both testified that the appellant was known as both "Toler" and "Carrier."

When the court submitted the charge to the jury at the guilt stage of the trial, the case was styled "The State of Texas vs. Willie Delores Toler AKA Willie Dee Carrier." The appellant's name with such alias was repeated twice in the body of the jury charge. The appellant timely objected to

1. From a transcription of the court reporter's notes it appears that when the indictment was read to the jury the prosecutor did not refer to the alias in the body of the indictment.

the inclusion of the alias, but the objection was overruled.

It has been held that the precursors of Article 26.07 and 26.08, supra, have no application to an alias used in the indictment and a court is not required to remove the alias from the indictment at the accused's suggestion when there is no showing of bad faith and no prejudice to the accused. *Brannon v. State,* 164 Tex.Cr. 83, 296 S.W.2d 760 (1956). See also *Johnson v. State,* 168 Tex.Cr. 172, 324 S.W.2d 209 (1959); *Hall v. State,* 158 Tex.Cr. 243, 254 S.W.2d 523 (1953); *Hornsby v. State,* 91 Tex.Cr. 166, 237 S.W. 940 (1922).

In *Fernandez v. State,* 172 Tex.Cr. 68, 353 S.W.2d 434 (1962), it was held not error to have the record include both names of the defendant where the evidence reflected he went by both names even though he had suggested his true name at the arraignment.

Appellant contends that in view of the written order entered at the time of arraignment and the fact the alias was not mentioned when the indictment was read to the jury her objection to the charge should have been sustained.

In light of the fact no physical change was made on the indictment as to the alias, see *Blaylock v. State,* 161 Tex.Cr. 346, 276 S.W.2d 835 (1955), and there was no showing of bad faith on the part of the prosecutor, we cannot conclude that there was any prejudice to the appellant, particularly in view of the testimony, including her own. She was not deprived of a fair and impartial trial nor was the overruling of the objection to the charge calculated to injure appellant's rights. See Article 36.19, Vernon's Ann.C.C.P.

It is observed that the alias was used in the charge at the penalty stage of the trial but the objection was not renewed.

■ Next appellant contends the court erred in refusing to strike reference to "manufactures" in the court's abstract charge on the definition of the delivery of a controlled substance since the term was not pleaded in the indictment or raised by the evidence.

The court abstractly charged the jury:

"A person commits the offense of unlawful delivery of a controlled substance if he or she knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver, a controlled substance listed in Penalty Group 1, 2, 3 or 4."

Later in the charge the court, in applying the law to the facts, charged:

"Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, WILLIE DELORES TOLER AKA WILLIE DEE CARRIER, on or about the 25th day of September, 1974, in the County of Orange, and State of Texas, as alleged in the indictment, did then and there knowingly or intentionally deliver to Joseph W. Payne a controlled substance listed in Penalty Group 1, to wit: Heroin, you will find the defendant guilty of the offense of unlawful delivery of a controlled substance and so say by your verdict; but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'"

It is clear that the court did not use the term "manufactures" in applying the law to the facts.

Article 4476–15, § 4.03(a), Vernon's Ann. C.S., reads:

"Except as authorized by this Act, a person commits an offense if he knowingly or intentionally manufactures, delivers or possesses with intent to manufacture or deliver a controlled substance listed in Penalty Group 1, 2, 3, or 4."

The abstract charge on the definition of delivery of a controlled substance tracks the statute and is strikingly similar to the forms recommended in the New Texas Penal Code Forms, p. 402, Morrison and Blackwell, 1973, and Texas Criminal Pattern Jury Charges, p. 731, 1975.[2]

---

2. Cf. Jury Charges for Texas Criminal Practice, McClung, p. 113 (1976); Texas Ann.Penal Statutes with Forms, Branch's Third Ed., p. 91 (1975).

In *Martinez v. State,* 157 Tex.Cr. 603, 252 S.W.2d 186 (1952), involving a marihuana conviction it was stated it had long been held proper for the trial court in its jury charge to set forth the general law defining the offense charged and then make a direct and pertinent application of the law to the facts in the particular case.

In *Grudzien v. State,* 493 S.W.2d 827 (Tex.Cr.App.1973), involving a sale of marihuana the court abstractly charged it was unlawful to "manufacture, possess, sell, prescribe, administer, dispense, or compound" any narcotic drugs. The court later applied the law to the facts of the case restricting the jury to determining the charge in the indictment—the sale of marihuana. There we held that there was no showing of any injury by the abstract charge or general statement of law which the trial court gave. See also *Rodriguez v. State,* 166 Tex.Cr. 86, 311 S.W.2d 412 (1958).

In *Dowden v. State,* 537 S.W.2d 5 (Tex. Cr.App.1976), an aggravated robbery case, it was observed that the trial court's jury charge setting forth the entirety of V.T. C.A., Penal Code, §§ 29.01 and 29.02, including portions thereof that were not pled in the indictment nor supported by evidence, was at best useless and at worst *may* confuse or mislead the jury and, therefore, prejudice a defendant.

While we adhere to the admonishment in *Dowden,* we cannot conclude that reversible error is here presented. See also Article 36.19, Vernon's Ann.C.C.P.

■ Appellant also urges that fundamental error occurred when the trial court failed to charge at the guilt stage of the bifurcated trial that the burden of proof in a criminal case was upon the State. This should have been done, but there was no objection to the charge nor any special requested charge. See Articles 36.14 and 36.-15, Vernon's Ann.C.C.P.; *Fields v. State,* 544 S.W.2d 153 (Tex.Cr.App.1976); *Mott v. State,* 543 S.W.2d 623 (Tex.Cr.App.1976); *Moreno v. State,* 541 S.W.2d 170 (Tex.Cr. App.1976); *Jackson v. State,* 536 S.W.2d

371 (Tex.Cr.App.1976). In absence of such objection or special requested charge no error is reflected.

■ It cannot be said that the failure of the court to so charge sua sponte as the appellant contends on appeal was calculated to injure the rights of the appellant or deprive her of a fair and impartial trial. See Article 36.19, supra; *Fields v. State,* supra.

While the voir dire examination of the jury panel is not before us and we do not know what was said there, we observe several places in the record where the jury was told by the attorneys that the burden of proof was upon the State. The court's charge quoted above required the jury to find the appellant guilty beyond a reasonable doubt.

Appellant's contention is overruled.

■ Turning to the grounds of error relating to the admission and exclusion of evidence, we find that appellant contends the court erred in refusing to permit her counsel to cross-examine the State's witnesses as to the times, places and circumstances surrounding other alleged sales of controlled substances on the night in question, thus denying her the right of confrontation of witnesses.

It appears that the officers involved made four purchases of narcotics on the night in question, the first being about 7 p. m., the second from Carrier about 8:15 p. m. and the last from the appellant about 9:55 or 10 p. m. Not much appears in the record as to the third buy, although it is shown that appellant was in no way connected with the first and third sales. Appellant urges that since these purchases were made in a limited amount of time in a town that was not large a time problem is presented and her cross-examination should not have been limited because it could have affected the credibility of the witnesses. Appellant does not point out where in the record her cross-examination was limited, and it is clear from the above that some testimony about the other purchases was elicited.

We first observe that if her cross-examination was limited she did not perfect a bill of exception nor proffer of proof in accordance with Article 40.09, § 6, Vernon's Ann. C.C.P., to show what the testimony would have been if she had been permitted to elicit such answers. Nothing is presented for review. See *Ross v. State,* 523 S.W.2d 402 (Tex.Cr.App.1975); *Davison v. State,* 510 S.W.2d 316 (Tex.Cr.App.1974); *Pegoda v. State,* 470 S.W.2d 675 (Tex.Cr.App.1971).

■ Further, the scope of cross-examination is within the control of the trial judge in the exercise of his sound discretion. *Richardson v. State,* 508 S.W.2d 380 (Tex. Cr.App.1974); *Garcia v. State,* 427 S.W.2d 897 (Tex.Cr.App.1968); *Young v. State,* 488 S.W.2d 92 (Tex.Cr.App.1972); 62 Tex. Jur.2d, Witnesses, § 861.

■ The record reflects that each of the State's witnesses was cross-examined at some length. If there were any limitation of cross-examination, we cannot say under the circumstances that the trial court abused its discretion.

The ground of error is overruled.

■ In another ground of error appellant complains that the trial court erred in failing to require the State to divulge material evidence concerning the other buys of drugs occurring the night of the alleged offense which may have had an effect upon the outcome of the trial.

Appellant does not point out in the record where she requested discovery, and this court should not be required to examine the record page by page to determine if such a request was made or not. Appellant does make reference to an unidentified black man. The testimony showed that undercover agent Payne engaged an unidentified black man in conversation and he got in the car with Payne (with Hebert in the trunk) and drove to the Carrier house where the purchase at 8:15 p. m. was made from Carrier. The unidentified man left Payne's car shortly thereafter, and, according to the officer's testimony, he was not with them again and they never did learn his name. He was not shown to be present at the time of the alleged offense. There has been no showing that any evidence was suppressed by the State. See *Elkins v. State,* 543 S.W.2d 648 (Tex.Cr.App.1976).

■ Appellant also complains that she was denied the offense report of deputy Wade concerning the purchase of heroin from Andy Carrier. On cross-examination Wade's offense report concerning the purchase of heroin from the appellant was requested and made available to the appellant for cross-examination and possible impeachment. See *Gaskin v. State,* 172 Tex.Cr. 7, 353 S.W.2d 467 (1962). When it was established that Wade had made a separate offense report concerning the delivery of heroin by Carrier, a request was made for that report and it was refused on the basis that it involved another defendant and another sale or delivery at a different time.

Even if it can be argued that appellant was entitled to the offense report, there was no trial or post-trial request for the excluded offense report to be included in the appellate record or for it to be sealed and forwarded to this court for its inspection. See *Zanders v. State,* 480 S.W.2d 708 (Tex.Cr.App.1972) (footnote #4); *Moore v. State,* 509 S.W.2d 349 (Tex.Cr.App.1974). Thus the error, if any, was not preserved since no steps were taken to have the report included in the record. *Henriksen v. State,* 500 S.W.2d 491 (Tex.Cr.App.1973); *Lewis v. State,* 481 S.W.2d 804 (Tex.Cr.App.1972); *Stevenson v. State,* 456 S.W.2d 60 (Tex.Cr. App.1970).

■ Lastly appellant contends the court erred in permitting the chemist, Jessie Blalock, to testify over her objection that Blalock was not on the list of witnesses furnished by the State following the granting of her pre-trial "Motion to Furnish Names."

At the beginning of the trial appellant was given the name of Blalock and was told he was the chemist. Appellant complained her earlier list showed the chemist was Urbanousky and objected to the substitution.

Blalock was the last witness for the State, and appellant then objected to his testimony because his name was not on the

**296**

earlier list and moved for a continuance, which was denied.

Blalock testified that he alone actually ran all the tests on the heroin in question, and that he assumed that Urbanousky, a supervisor in the laboratory where he worked, had been subpoenaed because the State did not know at that time who had analyzed the substances. Blalock testified he appeared as a result of a telephone call. During the midst of Blalock's cross-examination an overnight recess occurred and the appellant had time to study the witness' testimony and report. There is no showing that the appellant had interviewed Urbanousky, did any special investigation or special work in preparation for cross-examination of that witness, or was prejudiced in any way by the fact that Blalock turned out to the chemist who had actually run the tests. Appellant asserts the substitution restricted her ability to cross-examine Blalock, but does not explain how it did. Under the circumstances, no reversible error is reflected. See *Willis v. State,* 518 S.W.2d 247 (Tex.Cr.App.1975); *Clay v. State,* 505 S.W.2d 882 (Tex.Cr.App.1974); *Bradley v. State,* 450 S.W.2d 847 (Tex.Cr.App.1969).

The ground of error is overruled.

The judgment is affirmed.