

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00396-CR

_____

WALTER LEE GREEN JR. AKA WALTER GREEN JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1514816D

Before Womack and Wallach, JJ.; and Lee Gabriel (Senior Justice, Retired,
Sitting by Assignment)
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

A jury convicted appellant Walter Lee Green Jr. of the offense of continuous violence against the family. In three issues on appeal, Green complains about error in the jury charge. In his fourth issue, Green challenges the propriety of the prosecutor's closing argument. We find no merit as to each issue and affirm the judgment.

## I.  BACKGROUND[1]

Green was indicted in one count for the third-degree felony offense of continuous violence against the family. *See* Tex. Penal Code Ann. § 25.11. The indictment charged that Green committed two separate assaults causing bodily injury against Jill,[2] a person with whom Green had a dating relationship, and that the two assaults occurred in a period of time that is 12 months or less. The indictment further contained a habitual offender notice alleging that Green had two sequential prior felony convictions. The two prior felony allegations enhanced Green's possible punishment range from that of a third-degree felony to a term of "life or for any term of not more than 99 years or less than 25 years." *Id.* § 12.42(d). Green pled not guilty to the offense charged before the jury and not true to the felony allegations in the habitual offender notice before the court.

---

[1]Green does not challenge the sufficiency of the State's evidence against him; therefore, we will dispense with a lengthy recitation of the factual background and reserve discussion of the facts only as needed to resolve the issues raised.

[2]We use an alias to refer to Green's former girlfriend, whom the indictment identified by name.

2

The jury found Green guilty of continuous violence against a family member. After a punishment trial, the court found the two prior felony allegations to be true and assessed Green's punishment at 45 years' confinement in the Texas Department of Criminal Justice. Green brought this appeal.

## II. DISCUSSION

On appeal, Green argues in his first issue that the trial court erred by not including the definition of "dating relationship" in the court's charge and in his second issue that the trial court erred by including the definitions of "family," "family violence," and "household" in the charge. Green morphs his second issue into his third by arguing that including those definitions allowed the jury to convict on theories of guilt not contained in the indictment. Green acknowledges that there were no objections to the court's charge. In his fourth issue, Green cites numerous statements made by the prosecutor in closing argument that he complains were false and argued theories not pled in the indictment. Recognizing that there were also no objections made at trial to the prosecutor's closing arguments, Green argues that there can still be reversible error if the argument is manifestly improper or injects new and harmful facts.

## III. JURY CHARGE

During the charge conference at the end of the guilt-innocence phase of trial, Green's trial counsel affirmatively stated that the charge contained "everything we

3

asked for . . . and we are happy with the charge as written now."[3] Green personally addressed the trial court and, against the advice of counsel, requested the inclusion of the lesser-included offense of assault–bodily injury of a family member for each of the two alleged assaults that formed the basis of the greater charge. The trial court granted Green's request. Green made no further additional requests nor did he further object to the court's charge.

## A. STANDARD OF REVIEW

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g.); *see* Tex. Code Crim. Proc. Ann. art. 36.19. The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

---

[3]The court found Green was indigent and appointed counsel to represent him. Green filed a multitude of pro se motions while his case was pending, including motions declaring a conflict with his then-counsel and requests for substitution of counsel. At the time of trial, Green was represented by his fifth court-appointed attorney.

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge[ and] the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas,* 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor,* 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## B. OMISSION OF DEFINITION

Green first complains that the trial court erred by failing to include the statutory definition of "dating relationship" in the abstract portion of the charge. A trial court is statutorily obligated to instruct the jury on the "law applicable to the case," which includes statutory definitions that affect the elements of the offense charged. Tex. Code Crim Proc. Ann. art. 36.14; *Taylor,* 332 S.W.3d at 486 ("[T]he judge's duty to instruct the jury on the law applicable to the case exists even when defense counsel fails to object to inclusions or exclusions in the charge. . . ."). The trial court is "ultimately responsible for the accuracy of the jury charge and

5

accompanying instructions." *Taylor*, 332 S.W.3d at 488 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

In this case, Green was charged with continuous violence against the family. The Penal Code prescribes the offense of continuous violence against the family:

> A person commits an offense if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes an offense under Section 22.01(a)(1) against another person or persons whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code.

Tex. Penal Code Ann. § 25.11. The definition of "family" under this statute includes those persons in a dating relationship. Tex. Fam. Code Ann. § 71.0021(b) (defining "dating relationship" as a "relationship between individuals who have or had a continuing relationship of a romantic or intimate nature"). There was no dispute in the evidence that Green and Jill had been in a dating relationship nor does Green raise that as an issue on appeal or challenge the sufficiency of the evidence.

Because the term "dating relationship" has been statutorily defined in the Family Code and extended to the Penal Code in the continuous-violence-against-the-family offense, the trial court's failure to include the definition in the charge was error. Since this error was not preserved at trial, Green is entitled to reversal only if the error resulted in egregious harm. *See Nava*, 415 S.W.3d at 298. We discuss harm below.

## C.  INCLUSION OF DEFINITIONS

Green complains in his second issue that the charge included definitions in the abstract portion of the court's charge of the terms "family," "family violence," and "household," which were not relevant to the charged offense.  It is true that the indictment in this case alleged only that Jill was a person with whom Green had a dating relationship.  While a family member or household member may be the victim of continuous violence against the family, that was not the case here.  It was therefore error for the trial court to include these definitions.  Again, we must determine whether Green suffered egregious harm.

## D.  HARM ANALYSIS

In this case, the jury charge reflects that the trial court properly instructed the jury in the abstract paragraph concerning the elements of the offense charged as follows:

> A person commits the offense of continuous violence against a family member if, during a period that is 12 months or less in duration, the person two or more times engages in conduct that constitutes the offense of assault causing bodily injury against another person or persons who are members of the same family or household or is a person with whom the defendant had a dating relationship.

The application paragraph of the charge instructed the jury that if it found from the evidence beyond a reasonable doubt that Green,

> during a period of time that is 12 months or less in duration, did then and there engage in conduct that constituted assault bodily injury, specifically:  on or about the 20th day of September, 2017, did intentionally or knowingly cause bodily injury to [Jill], [a] person with

7

whom the defendant had a dating relationship, by pushing, striking or grabbing her with the defendant's hand, and on or about the 14th day of May, 2017, did then and there intentionally or knowingly cause bodily injury to [Jill], a person with whom the defendant had a dating relationship, by striking her or grabbing her with the defendant's hands, then you will find the defendant guilty of [continuous] violence against the family as charged in the indictment.

Despite the fact that the term "dating relationship" was not defined in the court's charge, the charge adequately described the offense and included all the elements. In the court's final charge, a conviction was not authorized without requiring the jury to find all elements of the offense charged. This includes a finding that Green and Jill were in a dating relationship. Indeed, the application paragraph narrowed the options, directing the jury that it could only find Green guilty if it found he was in a dating relationship with Jill.

"Our courts have held that when a statutory definition is not included in the jury charge 'it is assumed the jury would consider the commonly understood meaning in its deliberations.'" *Lovings v. State*, 376 S.W.3d 328, 338 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *Olveda v. State*, 650 S.W.2d 408, 409 (Tex. Crim. App. 1983)). "Dating relationship" is defined as a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. *See* Tex. Fam. Code Ann. § 71.0021.

The statutory definition of dating relationship is not complex or unusual, and the definition is much like the common meaning of the words. "[T]he combined dictionary meanings of the terms 'date' and 'relationship' reflect a commonly

8

understood meaning of the phrase 'dating relationship' that closely resembles the [Texas Family Code Section 71.0021(b)] statutory definition of 'dating relationship.'" *Leach v. State*, No. 03-13-00784-CR, 2015 WL 8607060, at *5 (Tex. App.—Austin Dec. 9, 2015, no pet.) (mem. op., not designated for publication); *see Granger v. State*, 584 S.W.3d 571 (Tex. App.—San Antonio 2019, no pet.) (holding that the jury could reasonably determine based on the common meaning of "dating relationship" that the defendant and the victim were in a dating relationship as defined by Texas Family Code Section 71.0021(b)).

Based on a review of the entire trial record, including the undisputed evidence that Green and Jill were in a dating relationship and the common meaning of that term, we conclude the record does not support a showing of egregious harm for failure to include a definition of that term in the charge.[4] We overrule Green's first issue.

---

[4]Jill testified that she and Green had a "dating relationship" for almost two years and at times held themselves out as husband and wife while they were living together. A thorough review of the testimony reveals that the defense never contested or questioned that testimony and that the only witness called by the defense did not dispute that there was a dating relationship between Green and Jill. In fact, the defense witness testified that Green and Jill lived together. Green's defensive theories were instead limited to disputing that the alleged assaults actually occurred as Jill claimed and that the injuries she claimed to suffer were not the result of an assault. Green's trial counsel's final argument only contested that the physical evidence and common sense did not support Jill's testimony concerning the assault and asserted that the police did not adequately investigate the allegations when made.

Green further complains that he was egregiously harmed by the trial court's inclusion of the definitions of "family," "family violence," and "household" because those terms were not related to the conduct charged in the indictment. A definitional instruction that goes beyond the allegations in the indictment will not present reversible error if the charge's application of law to the facts limits the jury's deliberations to the allegations in the indictment. *See Toler v. State*, 546 S.W.2d 290, 293–94 (Tex. Crim. App. 1977). Here, the definitions contained in the jury charge set forth the general law, including a broader description of the offense of continuous violence against the family. But the application paragraph correctly instructed the jury to find Green guilty only if it believed he assaulted Jill and she was a person with whom he had a dating relationship. "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *Plata v. State*, 926 S.W.2d 300, 302–03 (Tex. Crim. App. 1996) ("The inclusion of a merely superfluous abstraction . . . never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph. . . ."), *overruled in part on other grounds by Malik v. State*, 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997); *Wright v. State*, No. 02-15-00399-CR, 2016 WL 6520189, at *5 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication.).

This is the point where Green's second and third issues converge.[5] In his third issue, Green summarily argues that "the harm in this charge is that it permits conviction on a theory not alleged in the indictment, that is[,] that a family member or household member may be the victim of the offense, although a dating relationship victim is alleged in the indictment." In assessing harm in this case, we must consider the arguments of counsel. *Almanza*, 686 S.W.2d at 171. Green complains that the State's argument misdirected the jury to believe that it could find Green guilty upon a finding that he committed assault–bodily injury to another person who was a member of the same family or household, instead of a person with whom he had a dating relationship.

In final argument, the prosecutor told the jury that the word "'or' means options." The argument then specifically guided the jury to two examples of when "or" is used in the charge—first, in the options pertaining to the manner of the assault and, second, in the verdict form. Neither of these references touched upon the category of the victim. The State also explained in its closing that continuous family violence is "two individual offenses that put together make a felony." In so explaining, the prosecutor said, "[A]ssault[–]bodily injury to a family member happening one time. Assault[–]bodily injury to a family member happening a second time in a 12-month time span together is the charge." Green argues that these

_____

[5]Green's fourth issue will also factor into this discussion.

11

comments of the prosecutor exacerbated the error of including the abstract instruction referring to persons of the same family or household and would have authorized the jury to find Green guilty of an offense not alleged in the indictment.

As discussed above, the abstract instructions did not allow the jury to consider other theories of guilt not alleged in the indictment. Considering the entire record, it is clear that the State did not rely on any theory other than that Green and Jill were in a dating relationship. This is not a case where any error "affect[ed] the very basis of the case," "deprived the defendant of a valuable right," or "vitally affect[ed] a defense theory." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011) (citation and internal quotation marks omitted). As the Court of Criminal Appeals has stated, "[T]he charge before us, in the application of the law to the facts[,] effectively restricts the jury's deliberation to only those allegations contained in the indictment." *Grady v. State*, 614 S.W.2d 830 (Tex. Crim App. 1981). The excerpted part of the State's argument does not change that. We overrule issues two and three.

## IV.  CLOSING ARGUMENT

In his final issue, Green complains that the State misstated facts and argued facts and theories that were not pled in the indictment. Implicitly acknowledging that there were no objections made at trial to any of the complained-of arguments, Green argues that error was not forfeited because the arguments were manifestly improper, harmful, and prejudicial.

12

To preserve a complaint for our review, a party must have presented to the trial court a timely objection that states the grounds for the desired ruling if they are not apparent from the context of the objection. Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015). Further the trial court must have ruled on the objection, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). We cannot address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

The Texas Court of Criminal Appeals and this court have consistently and repeatedly applied Rule 33.1(a)'s preservation requirements to jury arguments. Tex. R. App. P. 33.1(a)(1); *see, e.g.*, *Estrada v. State*, 313 S.W.3d 274, 303 (Tex. Crim. App. 2010); *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004) ("Appellant did not object to the prosecutor's argument and therefore failed to preserve error."); *Hopper v. State*, 483 S.W.3d 235, 237 (Tex. App.—Fort Worth 2016, pet. ref'd) ("Hopper did not object to the second argument and, therefore, forfeited any error arising from this argument by the prosecutor."). "Indeed, this court and other intermediate courts have recognized that the preservation requirements apply even when the State's argument is egregious." *Williams v. State*, No. 02-17-00165-CR, 2018 WL 359916, at *2 (Tex. App.—Fort Worth Jan. 11, 2018, pet. ref'd) (mem. op., not designated for publication).

Green made no objections to the prosecutor's argument and failed to satisfy the preservation requirements of Rule 33.1(a). We hold that he forfeited his complaint, and we overrule his fourth issue.

## V. CONCLUSION

Having overruled each of Green's issues, we affirm the trial court's judgment.


/s/ Lee Gabriel
Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 15, 2021