**Tommy PERKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–93–00138–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 18, 1994.

Decided Nov. 7, 1994.

Dan Meehan, Bonham, for appellant.

Tom Wells, County Atty. of Lamar County, Kerye Ashmore, Asst. Dist. Atty., Paris, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

This is an appeal from a conviction for capital murder. Tommy Perkins brings two points of error: (1) that there is insufficient evidence corroborating the accomplice witness testimony to support the judgment of the conviction, and (2) that the trial court erred in refusing to allow cross-examination of the accomplice witness regarding his knowledge of parole law.

The State contends that three men, Tommy Perkins, Jason Martin, and Billy Frank "Sonny" Vickers, planned to rob Phillip Kinslow as he returned to his residence with cash from his store, the Superette.

According to evidence presented by the State through Martin, the three men met and planned the crime at Vickers's residence. They cased the store and Kinslow's home the day of the crime. On March 12, 1993, the night of the crime, the group took packing tape, two guns, and ski masks to Kinslow's residence where Vickers and Perkins hid near the gate. At approximately 8:10 p.m., Kinslow stepped from his truck to open the gate and Vickers rushed him. However, Kinslow was also armed and he shot Vickers in the knee. Kinslow was shot and died soon after. All three defendants were convicted. Perkins now appeals.

■ In his first point of error, Perkins contends that the evidence was insufficient to support the conviction due to lack of corroboration of the accomplice witness testimony. When the State relies upon an accomplice witness's testimony, the testimony must be both material and corroborated by independent evidence tending to connect the accused with the offense. TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979); *Holladay v. State,* 709 S.W.2d 194, 200 (Tex.Crim.App.1986). The testimony of an accomplice witness is corroborated sufficiently if, after eliminating from consideration the testimony of the accomplice, there is inculpatory evidence that tends to connect the defendant with the commission of the offense. *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988); *Vertz v. State,* 702 S.W.2d 196 (Tex.Crim.App.), *cert. denied,* 479 U.S. 830, 107 S.Ct. 114, 93

L.Ed.2d 61 (1986). The corroborating evidence need not directly link the defendant to the crime or be sufficient in itself to establish guilt. *Adams v. State,* 685 S.W.2d 661, 667–68 (Tex.Crim.App.1985). It is sufficient if the combined cumulative weight of the incriminating evidence furnished by the nonaccomplice witness tends to connect the accused with the commission of the offense. *Granger v. State,* 683 S.W.2d 387, 392 (Tex. Crim.App.1984), *cert. denied,* 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985). Corroborating evidence, however, is insufficient if it connects the defendant to the offense only when considered in connection with the accomplice testimony. *Sonenschein v. State,* 722 S.W.2d 450, 452 (Tex.App.–Austin 1986, pet. ref'd).

■ The testimony of Larry Miller, Sr., Larry Miller, Jr., and Aaron Shelton placed Vickers, Perkins, and Martin together inside the victim's Superette store several hours before the murder.

Doris Taylor testified that at 7:00 p.m. on the night of the murder, Perkins was with the other men at Vickers's residence. She also testified that the three men were not present from 11:30 to 12:00 p.m. Ruth Ann Vickers testified that all three men left Vickers's house at around 7:30 p.m., approximately thirty minutes before the murder. She further testified that Perkins and Vickers were each carrying a gun and wearing the same type of ski mask that was recovered from the scene.

Vickers's wife testified that at around 3:50 a.m. Perkins arrived at Vickers's residence. He appeared tired, cold, and nervous and told her that Vickers had been shot in the knee.

Perkins's girlfriend, Latrice Joyce Dangerfield, testified that in the early morning hours of March 13, 1993, a few hours after the murder, Perkins called her from Vickers's residence. He was nervous. She gave Perkins a ride from Vickers's residence. He rode in the back seat while Dangerfield drove. A .22 caliber bullet was found in that back seat and fourteen .22 caliber bullets were found in Perkins's car. The bullets were of the same caliber as the bullet which

had killed Kinslow. Perkins told her that Vickers had been shot when the group had gone to rob a man. She was also told that the man and Vickers shot at each other and Vickers had been wounded. Dangerfield also testified that Perkins had stated that Vickers asked Perkins why he had not fired his gun and that Perkins had replied that he had. Finally, she testified that Perkins gave her a false alibi to tell the police.

In *Farris v. State* an extrajudicial statement by the defendant was sufficient to corroborate accomplice testimony when it was corroborated by the corpus delecti of the crime. 819 S.W.2d 490 (Tex.Crim.App.1990). Here Perkins's admission to Dangerfield is corroborated by the corpus delecti of the facts at the crime scene. The testimony of Ruth Ann Vickers that Perkins and Vickers were carrying guns and wearing the same type ski masks of one that was recovered from the scene linked Perkins to the crime. The .22 caliber bullets found in Perkins's car, being of the same caliber as the bullet which killed Kinslow, is another factor linking Perkins to the crime. There is ample evidence to corroborate Vickers's testimony. This point of error is overruled.

■ In his second point of error, Perkins contends that the trial court erred in *refusing to allow cross-examination of the accomplice witness regarding his knowledge of parole law as applied to a life sentence for capital murder.* This was done in the form of granting the State's motion in limine, and Perkins' point of error complains of the motion in limine. However, because the *mere granting of a motion in limine cannot constitute reversible error*, *Romo v. State*, 577 S.W.2d 251, 252 (Tex.Crim.App. [Panel Op.] 1979), Perkins appears in his argument to be complaining about the restriction on the cross-examination of Martin at trial.

When the State called Martin to the stand a conflict arose. Martin had entered into a plea bargain agreement under which he was to testify against Perkins and which reduced his punishment from a mandatory life sentence requiring that he serve thirty-five

years before being eligible for parole to a robbery with a prior conviction, carrying a twenty-five year sentence with eligibility for parole within one-half the time.[1] Perkins wanted to question Martin about the mandatory time without parole under the life sentence.

Most criminal trials to a jury are conducted in a bifurcated proceeding; however, in the situation involving Perkins, because the sentence is mandatory, there would be no need for a punishment phase to be conducted. The State did not want the jury to be aware at the guilt/innocence stage of the trial of the mandatory thirty-five years without parole. The trial court granted a motion in limine ordering the defense not address the fact that if Perkins were to be convicted of capital murder and given a life sentence, he would be required to serve at least thirty-five years before being eligible for parole. Questioning Martin about his eligibility for parole if he had received the life sentence would have disclosed to the jury Perkins's eligibility for parole if he received a life sentence for the capital offense.

■ Generally, the scope of cross-examination is within the discretion of the trial court. *Toler v. State*, 546 S.W.2d 290, 295 (Tex.Crim.App.1977). The trial court's determination of admissibility will not be reversed on appeal unless a clear abuse of discretion is shown. *Werner v. State*, 711 S.W.2d 639, 643 (Tex.Crim.App.1986); *Johnson v. State*, 698 S.W.2d 154, 160 (Tex.Crim. App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Nubine v. State*, 721 S.W.2d 430, 432 (Tex.App.–Houston [1st Dist.] 1986, pet. ref'd). More specifically, limitations on the scope of cross-examination to show by the witness's answers that he is biased will not be grounds for reversal unless the court's ruling constituted an abuse of discretion. *Catching v. State*, 364 S.W.2d 691 (Tex.Crim.App.1962).

■ Perkins first asserts that the cross-examination was relevant. *A party should be allowed to show all facts that tend to demon-*

---

1. Even though the charges against both Perkins and Martin were capital offenses, the State had waived the death penalty. Therefore, a convic-

tion would carry a mandatory life sentence with no eligibility for parole for the first thirty-five years.

strate bias, interest, prejudice, or any other motive, mental state, or status of the witness that, fairly considered and construed, might even remotely tend to affect the witness's credibility. *Hinojosa v. State*, 788 S.W.2d 594, 600 (Tex.App.–Corpus Christi 1990, pet. ref'd). Any motive that operates on the mind of a witness during testimony is material to the trial because of its effect on the witness's credibility. *Coleman v. State*, 545 S.W.2d 831, 834 (Tex.Crim.App.1977). Extreme prejudice ensues from a denial of the opportunity to place a material witness in his proper setting as regards his testimony through cross-examination. *Harris v. State*, 642 S.W.2d 471, 476 (Tex.Crim.App.1982).

■ This evidence is clearly relevant to the cross-examination of the witness because it tends to prove his motivation to testify for the State. Though the evidence may be probative of this fact, the probative value must not be substantially outweighed by the prejudicial value against the State. In deciding whether a witness may be cross-examined on a collateral matter for the purpose of showing bias, the trial judge must balance the probative value of the evidence against the possibility of undue prejudice. TEX. R.CRIM.EVID. 403; *Cloud v. State*, 567 S.W.2d 801, 802–03 (Tex.Crim.App. [Panel Op.] 1978).

The matter of parole of the defendant is not a proper consideration for jury deliberation at the guilt/innocence stage of a trial. The trial court had to determine whether such information could be elicited to show bias on the part of the witness, although at the same time, it would bring in a matter which was not proper for consideration by the jury during its deliberations. In reaching its decision, the trial court was aware that the evidence was before the jury that the State had recommended in its plea bargain with Martin that Martin's sentence be reduced from life to twenty-five years. This reduction showed the jury that Martin had received a significant benefit from the plea bargain but did not discuss parole. The trial court did not close the door on cross-examination concerning the plea bargain but only disallowed the explanation of parole if there had been no plea bargain. The State brought out on direct examination of Martin that Martin had entered into an agreement with the State that, if he testified truthfully against Tommy Perkins, he would receive twenty-five years in the penitentiary for the reduced offense of robbery. The following cross-examination occurred:

Q. Who did you cut a deal with?

A. I don't—I guess the State of Texas.

Q. And they agreed to charge you with what?

A. Robbery with a prior conviction.

Q. Do you think that's fair?

A. For the part I played in it, yes, sir.

Q. Do you understand you could be charged with capital murder?

A. Yes, sir, I understand that.

Q. Do you know what the range of punishment for capital murder is?

A. Yes, sir, I do.

Q. What is that?

A. It's automatic life sentence or the death penalty.

Q. That's it, isn't it?

A. Yes, sir.

Q. Do you like being in prison?

A. No, sir, I do not.

Q. You don't like it at all?

A. No, sir.

Q. You don't want to go back this time, do you?

A. No, sir.

Q. You sure don't want to go back for a life sentence?

A. No, sir.

Q. Because of that, there is not anything you wouldn't say, is there?

A. Do what?

Q. You would tell this jury anything to keep from going to prison, wouldn't you?

A. No, sir. I agreed to tell the truth. That's what I'm here for.

Q. Is that right?

A. Yes, sir.

Because the trial court was aware that the defendant had had an opportunity to cross-examine the witness Martin about his plea bargain, the trial court did not abuse its

discretion in excluding the evidence about the witness's eligibility for parole under a mandatory life sentence. This point of error is overruled.

The judgment of the trial court is affirmed.