Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



RODNEY REISTER,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-02-00539-CR

Appeal from the

120th District Court

of El Paso County, Texas

(TC# 20010D03071)




O P I N I O N

           Appellant was charged with the offense of capital murder for remuneration for taking
the life of Lynn Reister, his sister-in-law. The jury found Appellant guilty of the lesser-included offense of murder. The court assessed punishment at life imprisonment. We affirm
the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           On May 24, 2001, the thirty-year-old deceased, Lynn Reister, was found with her
throat slashed in a bedroom of her home in El Paso, Texas. She was about six months
pregnant and she had defensive wounds on her hands. The ensuing investigation centered
upon her husband, Roger Reister, and her brother-in-law, the Appellant, Rodney Reister. 
The investigation revealed that Roger Reister was a sergeant in the Army and his wife, Lynn,
was a captain. Their marriage was in difficulty, and when Lynn Reister was deployed to
Saudi Arabia in March, 2000, Roger stayed behind and engaged in partying activity at their
house. He also had sexual relations with several woman.
           The evidence adduced at trial revealed that Roger Reister became concerned that if
his wife found out about his activities, the military would take action against him and he
would lose custody of the couple’s son, and he would have to pay child support. He began
soliciting various people to kill his wife. Appellant was one of those people. The killer was
to be paid from life insurance proceeds and from other property.
           Roger Reister recruited one individual to kill his wife, but the attempt failed when that
individual was scared off by a neighbor. Roger Reister became concerned as his wife was
soon to be transferred to Minnesota to teach ROTC. Appellant agreed to kill his sister-in-law. Roger Reister arranged for Appellant to enter the home. He surprised Lynn Reister in
bed and killed her with a knife. The police investigation revealed a bloody palm print on her
body made by Appellant. A warrant issued for Appellant. After his arrest, Appellant
confessed during questioning to having killed Lynn Reister at the behest of his brother.
II. DISCUSSION
           In Issue No. One, Appellant asserts that the court erred in denying his motion to
suppress the confession as it was involuntarily given in violation of the state and federal
constitutions. At the hearing on Appellant’s motion to suppress his confession, it was
revealed that during the investigation after the discovery of the body, Appellant went to the
offices of the Crimes Against Persons (CAP) division of the El Paso Police Department to
give a statement. Appellant gave a non-incriminatory statement. He was not a suspect at that
time. The next day Appellant was asked to give a set of fingerprints as a normal part of the
investigation as Appellant had lived at the house for a period of time. During this time, the
bloody print was found on the deceased. Appellant was asked to give a second set of prints
as the first set was of poor quality. He came to the CAP offices and gave a second set of
prints. He then left.
           Gonzalo Chavarria, a detective with the CAP division, stated that he was directed the
next day, the 26th of May, to contact Appellant and ask him to come to the CAP offices for
a third time. Appellant agreed and upon arrival, he was taken to an interview room. He was
told by a detective named Sergeant Lavander that an arrest warrant had issued for
Appellant’s arrest. Appellant was placed under arrest and he was handcuffed. He was read
his Miranda rights. Appellant stated that he understood his rights and he voluntarily agreed
to give another statement. He was not handcuffed during the interview. Appellant gave
written consent to search his apartment, and both his car and his girlfriend’s car. The
interview then commenced at about 7:19 p.m.
           Detective Chavarria testified that Appellant never invoked his right to an attorney, and
he never requested a termination of the interview. He was provided with cigarettes and
sodas, and was given bathroom and rest breaks. Chavarria stated to Appellant that his
brother, Roger, had implicated him in the murder. This was a fabrication on the part of
Chavarria. Appellant denied involvement in the murder. After two hours, Appellant was
told his prints matched with a print found on the body. He then admitted to having
participated in the murder and he implicated his brother.
           While Appellant’s statement was being typed, he was not handcuffed and he was
allowed to smoke. He appeared lucid, and he did not appear to be under the influence of
drugs or alcohol. He appeared rested, and he was never denied access to other people or a
telephone. He was not promised anything in return for his statement. The statement was
concluded at about 3:23 a.m. on Sunday, May 27, 2001. After the statement was typed,
Appellant reviewed it and he initialed and signed it. The confession was witnessed by two
officers and he was then taken before a magistrate. He was then booked into the county jail. 
Detective Chavarria stated that Appellant initially did not want to give a statement. The
detective stated that he did not tell Appellant he had to give a statement; however, he did tell
Appellant that he wanted him to give a statement. Appellant was confident, pleasant, and
cooperative throughout the interrogation.
           Detective Arturo Ruiz was present during the interview. He also gave Appellant his
Miranda warnings. He also stated that Appellant never asked for an attorney and did not
seek to terminate the interview. Appellant was not promised anything and he was not
threatened. Appellant asked Detective Ruiz to speak with Appellant’s father. He did so and
related the conversation to Appellant.
           Appellant testified at the suppression hearing. He stated that when he went to the
CAP offices the last time, Detective Chavarria accused him of killing Lynn Reister, and he
invoked his right to an attorney. The detective took his personal belongings from him and
he would not let him make any calls. Appellant related that he continued to invoke his right
to an attorney. Detective Chavarria threatened him that if he did not cooperate that they
would lodge a capital murder charge; however, if he cooperated, he would receive the lesser
charge of involuntary manslaughter. In light of this statement, Appellant decided to confess. 
           He related that a police lieutenant for CAP came into the room and stated, “Anything
that my detectives tell you that they would do, I will back them up 100 percent on.” 
Appellant took this to mean that he would be charged with involuntary manslaughter if he
cooperated. Appellant described the lieutenant as being a slim Hispanic with black hair with
a bit of grey.
           Detective Chavarria testified on recall. He related that the CAP lieutenant was not
working the day Appellant gave his statement. He stated that no lieutenant spoke with
Appellant that day. The only supervisory detective working that day was Sergeant Lavender
who was a forty-year-old male with light skin and blond hair. Another detective, Andrea
Baca, testified that the CAP lieutenant, Lt. McBain, did not work the day the statement was
taken, and he was not in El Paso on that day.
           We review the trial court’s decision on a motion to suppress under an abuse of
discretion standard. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
When there is conflicting evidence about whether a confession was voluntary, the trial court
is the sole judge of facts at the suppression hearing, and an appellate court may not disturb
any finding supported by the evidence. Dunn v. State, 721 S.W.2d 325, 336 (Tex. Crim. App.
1986). Whether a confession is voluntary is a mixed question of law and fact. Garcia v.
State, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). Appellate courts should give almost
absolute deference to trial court determinations of historical fact supported by the record,
especially when those findings are based on an evaluation of credibility and demeanor. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts should afford
the same amount of deference to trial court rulings on mixed questions of law and fact when
the resolution of those ultimate issues turns on an evaluation of credibility and demeanor. 
Id. However, an appellate court may review de novo mixed questions of law and fact that
do not fit within that category. Id. In the instant case, the trial court’s ruling at the
suppression hearing was based on its evaluation of the credibility and demeanor of Appellant
and the State’s police witnesses. Therefore, we afford almost complete deference to the trial
court’s ruling.
           Appellant maintains that his confession was obtained involuntarily because Detective
Chavarria lied to him by saying that his brother had implicated him in the murder. A
statement is involuntary if there was official, coercive conduct of such a nature that any
statement obtained thereby was unlikely to have been the product of an essentially free and
unconstrained choice by its maker. Alvarado v. State, 912 S.W.2d 199, 211 (Tex. Crim. App.
1995). Trickery or deception does not make a statement involuntary unless the method was
calculated to produce an untruthful confession or was offensive to due process. Creager v.
State, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). To determine if the confession was
voluntary, the reviewing court must examine the totality of the circumstances surrounding
the acquisition of the statement to determine whether it was given voluntarily. Id. This type
of misrepresentation is the least likely to render a confession involuntary. Green v. State, 934
S.W.2d 92, 100 (Tex. Crim. App. 1996).
           In this case, the misrepresentation that Appellant’s brother had implicated Appellant
in the murder did not cause Appellant to confess; rather, it was two hours later when
Appellant was confronted with the matching print that Appellant confessed. We find that
Detective Chavarria’s false statement to Appellant did not render his confession involuntary. 
See id.
           Appellant contends that promises of a lesser charge rendered the confession
involuntary. To render a confession inadmissible upon the ground that it was induced by the
promise of some benefit to defendant, such promise must be positive, and must be made or
sanctioned by a person in authority and it must also be of such character as would be likely
to influence the defendant to speak untruthfully. Creager, 952 S.W.2d at 856. Here, the
detectives testified that no such promise was made; furthermore, there was testimony that no
one was present at the CAP office that comported with Appellant’s description of the
lieutenant. As there was conflicting evidence before the court regarding the question of the
promises of leniency, the trial court’s finding that the confession was voluntary will not be
disturbed on appeal. Garza v. State, 915 S.W.2d 204, 214 (Tex. App.--Corpus Christi 1996,
pet. ref’d).
           Appellant also contends that his confession was involuntary because the invocation 
of his desire for counsel was ignored by the CAP detectives. Detectives Chavarria and Ruiz
both testified that Appellant never invoked his right to counsel and he did not seek to
terminate the interrogation. Again, the record supports the court’s determination that the
confession was voluntary. See Wyatt v. State, 23 S.W.3d 18, 24-25 (Tex. Crim. App. 2000).
           Lastly, Appellant asserts that as he did not want to make a statement, the court erred
in denying his motion to suppress. We note that Appellant was read his Miranda warnings
prior to the interview and he was uncuffed. He was given breaks and he was cooperative and
pleasant throughout the interview. Appellant appeared lucid and did not appear to be under
the influence of drugs or alcohol. He was given access to a telephone and he was allowed
to communicate with his father through the detectives. While there is some indication that
Appellant did not want to give a statement after he was arrested, the court found that the
ensuing confession was given voluntarily and there is evidence in the record to support that
determination. See Dawson v. State, 75 S.W.3d 533, 537 (Tex. App.--Texarkana 2002, no
pet.). Issue No. One is overruled in its entirety.
           In Issue No. Two, Appellant contends that the court erred in not permitting him to
cross-examine a State’s witness regarding article 15.17 of the Texas Code of Criminal
Procedure in violation of the state and federal constitutions. Article 15.17 provides, in
relevant part, that a person having custody of a person arrested shall without unnecessary
delay, but not later than 48 hours after the person is arrested, have the individual taken before
a magistrate to be warned of his rights. See Tex. Code Crim. Proc. Ann. art. 15.17 (Vernon
Supp. 2004-05).
           During cross-examination at trial, Detective Chavarria agreed with Appellant’s
counsel that article 15.17 requires that an arrestee must be taken before a magistrate without
delay. The witness stated that he took Appellant before a magistrate early Sunday morning
after he gave his confession. He stated he was aware of the requisites of article 15.17. 
Appellant’s counsel started to read article 15.17 to the witness and the State objected to going
into the law. The court sustained the objection and stated that the law would be covered in
the court’s charge to the jury. Appellant’s counsel stated that he intended to request a charge
on voluntariness in light of article 15.17 and the court replied that the charge would be
determined at a later time. Counsel did not ask any further questions.
           Detective Ruiz also stated he was aware that after an arrest the accused was to be
taken before a magistrate. When he was asked if this was to be accomplished without
unnecessary delay, the State lodged an objection and the court sustained the objection on the
grounds that he would not allow cross-examination of the witness as an expert on the law. 
The court stated that such matters would be addressed in the charge to the jury. The court
went on to state that defense counsel could ask any factual questions about that issue. 
Detective Ruiz then stated that Appellant was arrested about 7 p.m. and taken before a
magistrate at about 4 a.m. the next morning.
           Appellant contends that the court’s restriction on the cross-examination of the
detectives caused him to be unable to establish the causal connection between their acts and
the constraints of article 15.17. He asserts such a connection would have entitled him to an
instruction on voluntariness.
           The standard of review for alleged violations of the constitutional right to confront
witnesses is abuse of discretion. Lagrone v. State, 942 S.W.2d 602, 613 (Tex. Crim. App.
1997). Both the United States Constitution and the Texas Constitution give criminal
defendants the right to confront witnesses against them, but the trial court is also allowed to
place reasonable limits on cross-examination to avoid confusion or prejudice. Id. To show
that the trial court abused its discretion, an Appellant must show that the court prohibited
Appellant “from engaging in otherwise appropriate cross-examination designed to show a
prototypical form of bias on the part of the witness.” Id. However, if the court allows an
examination of factual issues but disallows forays into matters of law, the court has not abused
its discretion. See Perkins v. State, 887 S.W.2d 222, 226-27 (Tex. App.--Texarkana 1994, pet. 
ref’d). In the present case, Appellant was not restricted from asking factual questions
regarding any possible violation of article 15.17. Accordingly, Issue No. Two is overruled.
           In Issue No. Three, Appellant maintains that the court erred in denying his motion for
mistrial based upon prosecutorial misconduct in injecting extraneous conduct into the trial. 
Amber Young testified that she had once been Appellant’s fiancee. The prosecutor asked her
to explain why Appellant left her when they were living together. She stated that she had
started a new job. She came home on one occasion, and Appellant had packed his bags and
was going to leave. She then stated that Appellant had started living with a girl named Kim. 
Young stated that Appellant was cheating on her. Appellant lodged an objection stating that
the statement constituted an extraneous bad act for which the defense had not received notice. 
The court sustained the objection and gave an instruction to disregard to the jury. The court
denied Appellant’s motion for mistrial.
           Then with no defense objection, the following exchange occurred:
STATE:Was it your understanding that he was living with this person
Kim?
 
YOUNG:Yes, I had seen his car there, and I knew he was there, living
there.
 
STATE:Was there a period of time that he ceased living with Kim?
 
YOUNG:Yes.
 
STATE:And where was he living at that point?
 
YOUNG:In his car.
 
           On cross-examination, Appellant elicited from Young that Roger and Lynn Reister had
told her that Appellant was no good for her and that she could do better. On redirect
examination, the prosecutor asked if she replied to that statement and she said that at that time
she did not know Appellant was cheating on her. The court sustained Appellant’s objection,
issued an instruction to disregard, and denied Appellant’s motion for mistrial.
           Initially, we must address the State’s contention that Appellant has failed to preserve
error on appeal. For an objection to be timely, it must be made as soon as the ground for
objection has become apparent; if the defendant fails to object until after an objectionable
question has been asked and answered, and unless the defendant can show a legitimate reason
to justify the delay, the objection is not timely and any error has been waived. Lagrone, 942
S.W.2d at 617-18. Furthermore, the overruling of an objection to the admittance of evidence
will not result in reversal when other such evidence was received without objection, either
before or after the complained-of ruling. Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim.
App. 1998). When Appellant failed to object to the testimony that he was living with Kim,
he failed to preserve error.
           Furthermore, even if Appellant’s contention had been preserved for appeal, the court’s
instruction to disregard cured any error. A trial court’s denial of a mistrial is reviewed under
an abuse of discretion standard. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). 
The determination of whether a given error necessitates a mistrial must be made by examining
the particular facts of the case. Id. A mistrial is only required when the impropriety is clearly
calculated to inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced on the minds of the jury. Hinojosa v.
State, 4 S.W.3d 240, 253 (Tex. Crim. App. 1999). Generally, a prompt instruction to
disregard will cure error associated with an improper question and answer. This is so even
in those situations that involve the improper introduction of an extraneous offense. See Ovalle
v. State, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). We find that in this case, the
introduction of the cheating accusation had little impact on the issues before the jury and was
cured by the timely instruction to disregard. See id. Issue No. Three is overruled.
           In Issue No. Four, Appellant argues that the court erred in denying a request for a jury
instruction regarding the voluntariness of the confession due to intoxication. At trial Amber
Young testified that at around 3 p.m. on the day Appellant gave his confession to the police,
Appellant came home. He had bought a case of beer. Appellant went alone to a party at the
apartment complex party area. When he came back he had a beer in his hand. That was the
sole indication that Appellant had been drinking. Young thought that she may have seen
Appellant intoxicated on a prior occasion.
           At the charge conference, Appellant requested a voluntariness instruction pertaining
to Appellant’s confession because the evidence indicated that Appellant had been drinking
before he gave his confession. The court denied the request because the evidence did not
indicate that Appellant was intoxicated at the actual time he gave the confession.
           A trial court is required to give an article 38.23 instruction if there is a factual dispute
as to how the evidence was obtained. Balentine v. State, 71 S.W.3d 763, 773 (Tex. Crim.
App. 2002).


 Intoxication alone does not render a confession involuntary. Jones v. State, 944
S.W.2d 642, 651 (Tex. Crim. App. 1996); Garcia v. State, 919 S.W.2d 370, 387 (Tex. Crim.
App. 1994) (op. on reh’g). A confession only becomes involuntary due to intoxication if the
record reveals that the accused’s intoxication rendered him incapable of making an
independent, informed decision to confess. Jones, 944 S.W.2d at 651. The issue is the extent
to which a defendant was deprived of his faculties due to the intoxication. See Nichols v.
State, 754 S.W.2d 185, 190 (Tex. Crim. App. 1988), overruled on other grounds, Green v.
State, 764 S.W.2d 242 (Tex. Crim. App. 1989).
           Appellant signed his confession in the early morning hours of Sunday, May 27, 2001. 
There was testimony that Appellant did not appear to be under the influence of drugs or
alcohol when the confession was taken. Furthermore, the testimony of Amber Young does
not indicate that Appellant was intoxicated. It only marginally indicates that Appellant had
consumed any alcohol. The testimony indicates that Appellant did not drink any of the case
of beer before he went to the party. The only indication of his having consumed any alcohol
was the fact that he returned with a beer in his hand. There was nothing about his manner or
demeanor that indicated he had been consuming alcohol. We find that this evidence did not
give rise to the necessity of instructing the jury on the voluntariness of the confession relative
to intoxication. Issue No. Four is overruled.
           In Issue No. Five, Appellant contends that the court commented on the weight of the
evidence in response to a question from the jury. During jury deliberations, the court received
a note from the jury stating:
We are struggling with a legal definition Article 7, sub paragraph one speaks
to remuneration. Our question is -our question-I believe it should be, “[O]ur question
is remuneration to be considered strictly as the motivating factor or a motivating
factor?”
 
The court stated its intent to respond in the following manner:
 
[Y]ou are instructed that in a capital murder case, remuneration need not
be the sole motivating factor for committing a murder, but must be a motivating
factor as set forth in the application paragraph of the charge. 
 
           Appellant objected to the instruction stating that it was an improper comment on the
weight of the evidence. The court overruled the objection and the instruction was given to
the jury.
           When a defendant is found guilty of an offense other than the one in which charge
error is alleged, any error is harmless beyond a reasonable doubt. See Sutton v. State, 899
S.W.2d 682, 685 (Tex. Crim. App. 1995). In this case the only offense that involved
remuneration was the capital murder charge. Appellant was acquitted of that charge and was
convicted of the lesser offense of murder which did not involve any allegation of
remuneration. Accordingly, any error in the court’s instruction was harmless. Issue No. Five
is overruled.
           In Issue No. Six, Appellant argues that he received ineffective assistance of counsel
due to the fact that trial counsel failed to request the appointment of an expert to investigate
the Appellant’s background to obtain mitigating evidence for the punishment stage of trial. 
Successful claims of ineffective assistance of counsel must first demonstrate that counsel was
not functioning as counsel guaranteed by the Sixth Amendment in providing reasonably
effective assistance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80
L.Ed.2d 674 (1984). The second prong of this test requires a showing that counsel’s errors
were so serious as to deprive Appellant of a fair trial, such that there arises a reasonable
probability that but for counsel’s unprofessional errors, the results would have been different. 
Reasonable probability is a likelihood sufficient to undermine confidence in the outcome. 
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Texas adopted this test in Wilkerson v. State,
726 S.W.2d 542, 548 (Tex. Crim. App. 1986). See also McFarland v. State, 845 S.W.2d 824,
842-43 (Tex. Crim. App. 1992), cert. denied, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686
(1993). The constitutional right to counsel does not mean errorless representation. In order
to meet the constitutional standard, counsel must provide reasonably effective assistance. 
Wilkerson, 726 S.W.2d at 548. In reviewing these assertions, the totality of representation is
examined as opposed to focusing upon isolated acts or omissions. Ineffective assistance of
counsel cannot be established by isolating or separating out one portion of the trial counsel’s
performance for examination. Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). 
In that regard, this Court, on review, will not engage in hindsighted comparisons of how other
counsel, in particular, appellate counsel, might have tried the case. See Wilkerson, 726
S.W.2d at 548. A fair assessment of trial counsel’s performance requires that every effort be
made to eliminate the distorting effects of hindsight, to reconstruct the circumstances at trial,
and to evaluate the conduct from counsel’s perspective at the time. Stafford v. State, 813
S.W.2d 503, 506 (Tex. Crim. App. 1991). We must indulge a strong presumption that
counsel’s conduct falls within the wide range of reasonably professional assistance. The
Appellant must overcome the presumption that under the circumstances at trial, the challenged
action could be considered sound trial strategy. Strickland, 466 U.S. at 688-89, 104 S.Ct. at
2065; Stafford, 813 S.W.2d at 506. Consequently, allegations of ineffectiveness of counsel
must be firmly founded by the record. Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App.
1983); Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim. App. 1981). The burden is upon
Appellant to establish ineffective assistance of counsel by a preponderance of the evidence. 
Williams v. State, 837 S.W.2d 759, 761 (Tex. App.--El Paso 1992, no pet.).
           Initially, we note that Appellant did not file a motion for new trial and no hearing was
held regarding Appellant’s ineffectiveness claim. In most instances, the record on direct
appeal is undeveloped and cannot adequately reflect the failings of trial counsel. Thompson
v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). A defendant may rebut the
presumption of effectiveness by providing a record from which the appellate court may
ascertain that trial counsel’s performance was not based on sound trial strategy. Parmer v.
State, 38 S.W.3d 661, 666 (Tex. App.--Austin 2000, pet. ref’d). A defendant may provide that
record by filing a motion for new trial and obtaining a hearing thereon based on ineffective
assistance of counsel. Id. Any error in trial strategy will be deemed inadequate representation
only if counsel’s actions are without any plausible basis. Id. A record that does not include
any discernible explanation of the motivation behind trial counsel’s actions fails to establish
whether his or her actions were of strategic design or were the result of negligent conduct. 
Thompson, 9 S.W.3d at 813-14.
           Prior to the commencement of trial, Appellant requested the appointment of private
investigators in El Paso and Florida. This request was granted. In most instances the failure
to request the appointment of a mitigation expert witness is not ineffective assistance absent
a showing that the expert would have testified in a manner beneficial to the accused. The
Appellant speculates that Appellant was abused as a youth and states in his brief that the
failure to request such an expert left unknown what information could have been uncovered
to mitigate the degrees of punishment or to aid in the determination of whether or not to go
to the jury for punishment.
           However, it is mere speculation whether or not such a mitigation expert existed or there
was testimony available that would have benefitted Appellant. Investigators were appointed
and there is nothing in the record regarding their efforts regarding obtaining punishment
evidence. Accordingly, the record does not substantiate Appellant’s claim that he received
ineffective assistance of counsel with regard to the issue of the mitigation expert. Issue No.
Six is overruled.
           In Issue No. Seven, Appellant maintains that he received ineffective assistance of
counsel because trial counsel failed to request a jury instruction regarding the voluntariness
of the confession due to deceit, coercion, or promises. Again, we will not entertain an
ineffective assistance of counsel claim absent a showing in the record of trial counsel’s
reasons for not requesting such an instruction. See Bone v. State, 77 S.W.3d 828, 830 (Tex.
Crim. App. 2002). Issue No. Seven is overruled.
           Having overruled each of Appellant’s issues on review, we affirm the judgment of the
trial court.
 
RICHARD BARAJAS, Chief Justice
January 27, 2005
 
Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.
 
(Do Not Publish)