### T. M. GLASCOW AND C. M. WINTERS v. THE STATE.

#### No. 3810.   Decided February 13, 1907.

**1.—Theft—Felony—Foot-Race—Swindling—Fraudulent Pretext.**

Where upon trial for the theft of property over the value of $50, the evidence showed that the prosecutor did not intend to part with his money, but that he was to receive it back at all hazards, either the exact money or the exact amount, the offense was theft under article 858, Penal Code, and not swindling. It is well settled that it is competent to prove theft by a fraudulent pretext under an ordinary indictment of theft.

**2.—Same—Argument of Counsel.**

Where upon trial for theft the counsel for the State in his opening address to the jury stated that it was the theory of the State that the defendants were part of a gang of foot-racers, thieves and swindlers, and stated in addition that the facts proven showed such to be the case, there was no error.

**3.—Same—Withdrawal of Remarks.**

Where upon trial for theft the court excluded from the consideration of the jury by proper instruction, objectionable language of the State's counsel, there was no reversible error.

**4.—Same—Interruption of Counsel—Conduct of District Attorney.**

Where upon trial for theft during the argument of defendant's attorney he stated that he had forgotten to introduce some evidence, and the district attorney interrupted by saying that he had forgotten to introduce an agreement of counsel with reference to the ownership of the property, etc., and the court checked such interruption, there was no reversible error.

**5.—Same—Influence of District Attorney—Court's Certificate.**

Where in motion for new trial the defendants objected to inequality of the punishment on account of the influence of the district attorney, and the court's certificate explained that there existed no such influence, there was no error.

**6.—Same—Motion for new Trial—Vague Objection.**

On motion for new trial it is the duty of the counsel to point out specifically objections to the charge, and vague and indefinite objections will not be considered on appeal.

**7.—Same—Charge of Court—Circumstantial Evidence.**

Where upon trial for theft the evidence is positive, the court was not required to charge on circumstantial evidence.

**8.—Same—Burden of Proof—Reasonable Doubt.**

Where upon trial for theft the court charged that the jury must find defendants guilty beyond a reasonable doubt, there was no error in failing to charge that the burden of proof was upon the State.

**9.—Same—Charge as a Whole—Principal.**

Where upon trial for theft the court in his charge had previously defined the law of principals, and that the alleged stolen money must have been obtained by false pretense and design on the part of each of the defendants, there was no error, in charging that if one of the defendants was a principal with the others in obtaining said money, etc., to find him guilty.

**10.—Same—Loan—False Pretense—Charge of Court.**

Where upon trial for theft the evidence showed that the defendants obtained the money in question by the false pretense that they would pay it back, there

was no error in failing to charge that if the prosecutor loaned the money to one of the defendants, the same was no longer the property of prosecutor.

**11.—Same—Charge of Court—Principals—Harmless Error—Motion for new Trial.**

Where in a motion for new trial the charge of the court on principals was not objected to as being erroneous in stating that all persons were principals although not present, the same could not be considered; however, as defendants were present, such error was harmless.

Appeal from the District Court of Travis. Tried below before the Hon. Geo. Calhoun.

Appeal from a conviction of theft of money over the value of $50; penalty, two and four years imprisonment in the penitentiary.

The opinion states the case.

*Walton & Walton* and *James O. Wiley*, for appellants.—On question of circumstantial evidence: Conner v. State, 17 Texas Crim. App., 1; Beason v. State, 43 Texas Crim. Rep., 443.

This testimony shows that the representations, made by Taylor and Hynds did not relate to an existing fact or to a past event, but was mere false promise, or a false profession of intentions which will not support this conviction. See Powell v. State, 44 Texas Crim. Rep., 273. Also see Blum v. State, 20 Texas Crim. App., 578; Allen v. State, 16 Texas Crim. App., 150; Johnson v. State, 41 Texas, 65; Porter v. State, 23 Texas Crim. App., 295; Flynn v. State, 83 S. W. Rep., 206; Randle v. State, 70 S. W. Rep., 958.

If the said W. O. Taylor borrowed the said $1,460 from the said Guess, and the said Guess loaned the said money to the said W. O. Taylor, or to the man Hynds, the said $1,460 becomes the property of the said W. O. Taylor or the said Hynds, or to them jointly, and was no longer the property of the said Guess, he having parted with his title thereto, and it does not matter what representations were made to obtain the title to said property nor with what intentions same was obtained, the appropriation of same would not be theft, even on the part of the person so obtaining said money, and most certainly not, on the part of others not present when same was obtained. Quintow v. State, 1 Texas Crim. App., 65; Taylor v. State, 32 Texas Crim. Rep., 110; Frank v. State, 17 S. W. Rep., 936.

*J. E. Yantis*, Assistant Attorney-General, for the State.—On charge of circumstantial evidence: Beason v. State, 43 Texas Crim. Rep., 443.

BROOKS, JUDGE.—T. M. Glascow, C. M. Winters, Ed Hynds, and W. O. Taylor, were jointly indicted for theft of property over the value of $50, under article 858, Penal Code, of this State. On the trial there was a severance, and Glascow and Winters were placed upon trial, and were convicted of said offense, and the punishment of Glascow was assessed at two years confinement in the penitentiary,

and that of Winters assessed at four years confinement in the penitentiary, under article 869 of the Penal Code.

Appellant's first contention is that the facts in the case do not constitute theft under article 858 of the Penal Code, but that the facts, if any offense is shown, show swindling or fraudulent conversion by bailee.

This prosecution grew out of a foot race that was run on December 14, 1905, in Austin, Texas, between C. M. Winters and Ed Hynds, two professional foot-racers. W. O. Taylor was Hynds' backer and T. M. Glascow was the backer of Winters. This race was agreed upon by the above named parties at Cleburne, Texas, in the latter part of November or the beginning of December, 1904. Hynds was not at that time in condition to run, and demanded and was allowed ten days or two weeks in which to get in condition, and he and his backer left Cleburne for a place in Bell County, Texas, where he expected to train. At this time none of the parties knew C. P. Guess. Hynds and Taylor while on the train between Temple and Rogers, Texas, met C. P. Guess, who lived at Rogers. C. P. Guess got off at Rogers and Hynds and Taylor continued on to their destination. The next day Hynds and Taylor went to Rogers, where they remained until the night of the 13th of December, 1904. During their stay in Rogers, Hynds and Taylor told C. P. Guess about the foot race that was to be run between Hynds and Winters, and persuaded him to raise $1,460 to be bet on Hynds in said race. Winters came to Austin from Cleburne on the morning of the 12th of December, and notified Hynds at Rogers of his arrival and asked when he, Hynds, would be ready to run the race. Hynds either telephoned or wired Winters that he would run him on the 14th of December, in Austin, and Winters at once telegraphed T. M. Glascow that the race was made and would be run in Austin on the 14th and to come at once. Glascow left Cleburne on the night of the 13th and reached Austin on the morning of the 14th, and met Winters, and they went to the Millett Mansion. Hynds, Taylor and C. P. Guess left Rogers together on the night of the 13th and reached Austin also on the morning of the 14th on the same train with Glascow, but did not meet him on the train, and they went to the Sutor hotel. Before coming to Austin, and while in Rogers, Hynds and Taylor told Guess that "If he could get up as much as $1,500 it would be simply a walk-over; he (meaning Winters) simply can't run; our man (meaning Hynds) is a runner." Hynds, Taylor and Guess came to Austin to run the race and to bet any amount on it up to $3,000 on a square, fair foot race. While at Rogers, Guess saw Hynds run and knew he was a good runner; and Hynds and Taylor told Guess that he would have a sure thing to win; that Hynds could outrun Winters, but Glascow did not think so. Guess raised $1,460 and brought it to Austin with him, and Taylor gave him $40, making $1,500. This money was delivered by Guess to W. O. Taylor between 8 and 9 o'clock December 14, 1904, at the Sutor hotel, under

the following understanding, as testified to by C. P. Guess, who said: "I did not come down here to bet it (the money) at all, sir. I didn't bring it to bet; no sir. I brought it to loan to W. O. Taylor, and he was to bet it on a foot race. Mr. Taylor borrowed the money from me. I loaned it to him to use his judgment to bet on a foot race. I voluntarily loaned him the money to bet; I would not bet it myself. I was not willing to bet it, so I loaned it to him. It was a straight loan. Mr. Taylor promised to give this money back to me. I loaned it to him on the promise that he would see that I got it back." And again, said C. P. Guess still testifying, "I was to have one-half of what was won. I let Mr. Taylor have the money; when I say loan I mean that I just let him have it. I just let Mr. Taylor have the money to bet on a square, fair foot race. In the event he won, I was to get half of what they won, and all of my money back. The $1,460 was mine, though Taylor had it. If no race had been run it was my money. I was not to lose my money under any circumstances. They told me I would get my $1,460, race or no race, or any other way. I would get my $1,460 if the race was run or not run, or in any case. If Hynds fell down or died, or anything that way, Taylor was to hand me back my money—not my money, but $1,460 of good money like I let him have. In talking to Taylor and Hynds on the train coming to Austin to the race, something was said about falling down in the race, and about something that could happen, and I was told by them that I need not study about that proposition. I mentioned what would happen, and we were talking about what could happen. Hynds said there was no danger of a man falling down. I was talking about what if he (Hynds) fell down, or something like that. I said something about what could occur, and they (Winters and Glascow) get the money, or something like that, and they (Hynds and Taylor) said, 'You need not be uneasy about that; you will get your $1,460, no matter what happens.' After I got to Austin with the above understanding, I turned the money over to Taylor in the presence of Hynds between 8 and 9 o'clock a. m., December 14, 1904, at the Sutor hotel." And said witness still testifying said: "It was understood between Hynds, Taylor and me that I was to get my $1,460 back whether the race was run or not, or whether Hynds or Winters won; it made no difference; I was to get my money back anyhow. It made no difference whether he (Hynds) fell down or died or anything else, I was to get my money back. Mr. Taylor and (Hynds) then were to see that I got my money back; there was no possibility for me to lose. They (Taylor and Hynds) were to pay me back this money I let them have to bet on the race, it didn't make any difference what happened. If the race was run and Hynds won, I was to get half that he won and get my money back besides. If the race was run and Hynds lost (he and Taylor), they were to pay me my $1,460. This conversation was on the train coming down (to Austin). I didn't have my gun or pocketknife, and something

was said about falling down, and they said, 'Well, there is no danger of that; a good runner never falls down; 'there was not much said about the race being won or lost, because there wasn't any chance to lose."

In addition to the above statement, which was taken from appellant's brief, the prosecuting witness' testimony shows that the foot race was run, all parties named in the indictment being present, and the money was placed in a satchel, which the appellants and Glascow claimed to have covered by putting similar amounts in the satchel. The satchel was locked and it was agreed among the parties that the man who won the race should receive the entire contents of the satchel. The defendants stated that they had about $1,500 a piece in the satchel, at least this is the substance of the prosecuting witness' testimony.

We do not agree with appellant that the above cited evidence shows swindling, but under authorities of this court it clearly shows theft. It is well settled that it is competent to prove theft by fraudulent pretext under an ordinary indictment for theft. See Dow v. State, 12 Texas Crim. App., 343; Morrison v. State, 17 Texas Crim. App., 34, and Atterberry v. State, 19 Texas Crim. App., 401. As to the above stated facts constituting theft and not swindling, see Porter v. State, 23 Texas Crim. App., 295; Flynn v. State, 83 S. W. Rep., 206; Connor v. State, 76 S. W. Rep., 924, and Randle v. State, 70 S. W. Rep., 958.

The evidence of the witness Guess, as above detailed, and other portions of same in the record, shows that he did not intend to part with his money; that he was to receive it back at all hazards, either the exact money or the exact amount of money. This being true, the facts constitute theft, and there was no error in the court so charging.

Bill of exceptions number 1 shows that after the witness Guess, who claimed to have lost $1,460, had testified, defendant made a motion to quash the indictment in the case, and to instruct the jury to return a verdict of not guilty, which motion the court overruled. This question is disposed of in what has heretofore been said.

Bill of exceptions number 3 shows the county attorney, in his opening address to the jury, used the following language: "It is the theory of the State in this case that the defendants are part of a gang of fake foot racers, thieves and swindlers." Appellant objected to said language as improper, and calculated to prejudice the jury against the defendants and was intended for said purpose. This bill is approved with the following explanation: "The attorney for the State, in addition and in connection with the above language, stated that the facts proven on the trial, showed such to be the character of the defendants in the opinion of the said attorney." We see no error in the ruling of the court.

The district attorney used the following language as shown by bill of exceptions number 4: "The defendants are a set of thugs who

have been driven from the northern States for swindling, where the laws have been better inforced against such cattle, than in Texas." To this appellant objected because there was no evidence in the case to warrant or support said language, and because same was used to prejudice the jury against the defendants. The court approved this bill with this statement: "The district attorney was instructed to stay within the record and the jury were instructed to disregard said statement by the district attorney and not to consider the same for any purpose." In view of the action of the court in excluding this unwarranted language, we do not think there is such error as to authorize reversal of this case.

Bill of exceptions number 5 shows that while defendant's counsel was addressing the jury the district attorney interrupted the counsel and continued so to do after defendant's counsel had declined to submit to an interruption, and at the same time said district attorney so interrupted defendant's counsel, he the said district attorney, in the presence and hearing of the jury, mentioned the written evidence of two witnesses for the State that had not been introduced in evidence that supported the testimony of C. P. Guess as to whether or not said Guess owned or possessed $1,460 as he claimed he did, to which interruption and reference defendants then and there excepted, because said interruption broke into the argument of counsel for defendants, distracted the attention of the jury and informed them of the existence of testimony materially bearing upon the case that had not been offered in evidence. This bill is allowed with this statement: "During the argument of the attorney for the defendants he made some statements regarding evidence he had forgotten to introduce, whereupon the district attorney stated that he would agree to the defense offering any evidence that they might desire to offer, as he had forgotten to offer an agreement that he had with the defendant's attorney in regard to the ownership and possession of the said sum of $1,460 by the witness Guess. The defendant's attorney stated that he did not desire to be interrupted, and stated that he would take a bill of exceptions to the interruption by the district attorney, whereupon the court instructed the district attorney not to interrupt the attorney for the defendants any more, and also instructed the jury to disregard any statement made by the district attorney in said interruption." With this explanation of the conduct of the district attorney, we cannot say there was such error as to authorize reversal of the case.

Bill of exceptions number 6 presents the following matter: "Defendants made a motion for a new trial, one of the reasons for granting of which is section 9 thereof, as follows:

"'Because the jury were under the domination and influence of the district attorney and obeyed him and did as he requested them to do, and fixed the punishment of the defendant Winters at much more than Glascow '" This bill is allowed with this explanation; "In the opin-

ion of the court the jury in this case was not under the domination and influence of the district attorney, and in fixing the punishment of the defendants, acted upon their own judgment and discretion as they in law had a right to do." This explanation disposes of appellant's bill.

The next bill of exceptions practically presents the same matter with a similar explanation. There was no error in this.

In motion for new trial appellants complains that the charge of the court is confusing and fails to charge the law of the case in part, and where same attempts to charge the law, it does not do so fully and with that clearness and precision required in such cases as this. This objection is too vague and indefinite to be considered by this court. In motion for new trial it is the duty of the counsel to point out specifically any objection he may have to the charge.

Appellant's second ground in motion for new trial complains that the court erred in not charging on circumstantial evidence. We do not think this is a case of circumstantial evidence, but of positive testimony. The prosecuting witness swore that the money he had turned over to Taylor was placed in a satchel, and that Glascow and Winters after the race claimed same, and it was turned over to them.

The third ground of complaint in motion for new trial is that the court failed to charge the jury that the burden of proof was upon the State. The charge does tell the jury that they must believe the defendants guilty beyond a reasonable doubt, and find them guilty beyond a reasonable doubt.

The fourth ground in motion for new trial complains because the only portion of said charge of the court directing the jury to find the defendant T. M. Glascow guilty is as follows, and is paragraph 7, page 3 of said charge:

"If you find from the evidence in this case beyond a reasonable doubt that the defendant T. M. Glascow was a principal with the said W. O. Taylor, as that term has been hereinbefore defined, to the obtaining of the said money (if it was obtained) by the said Taylor from the said C. P. Guess, then you will find the defendant T. M. Glascow guilty of theft of corporeal personal property of over the value of $50, otherwise you will acquit the defendant Glascow." Appellant insists this language is not the law. It only requires one thing for the jury to do, and that is if they found that Glascow was principal with Taylor, then they should convict said defendant. The charge, when read as a whole, is not subject to the criticism urged by appellant. The court does tell the jury that the money must have been obtained by false pretense and design on the part of each of the parties, and that Glascow and Winters must have been acting as principals with the defendant Taylor at the time the money was obtained. The court had previously defined principal according to the statute.

Appellant further insists in said motion for new trial the court

should have charged the jury that if Guess loaned the money to Taylor, that the money was no longer the property of Guess. Guess' testimony, however, shows that he obtained the money by false pretense under the direct statement that he would not lose the money but would pay it back, even if he (Taylor) lost the race. In the charge on principal, the latter clause of same states that a party would be a principal whether in point of fact all were actually, bodily present on the ground when the offense was actually committed, or not. The motion for new trial, however, does not urge this error, but we note that appellant, in supplemental brief, points said error out. We cannot consider any errors that are not specifically stated in motion for new trial, or in bill of exceptions. See article 723, Code Criminal Procedure. Furthermore, in view of the fact that the defendants were all present at the time of the commission of the offense, this error in the charge of the court would be harmless, even if excepted to.

We have carefully reviewed all of appellant's assignments of error, and do not believe any of them authorize reversal of this case. Believing that the evidence amply supports the verdict, the judgment is affirmed.

*Affirmed.*

Henderson, Judge, dissents.