

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00216-CR
## NO. 02-14-00217-CR

TERRY WAYNE SCHWALBACH                                    APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1329444D, 1329450D

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Terry Wayne Schwalbach appeals his sentence for unauthorized use of a motor vehicle and evading arrest with a motor vehicle and an affirmative finding of the use of a deadly weapon.  In four issues, Schwalbach asserts that (1) the trial court erred by failing to instruct the jury that the State had the burden

---

[1]*See* Tex. R. App. P. 47.4.

of proof on the deadly weapon issue; (2) the trial court erred by failing to set out the elements of evading arrest in the jury charge; (3) the evidence was insufficient to support the deadly weapon finding; and (4) the jury gave him a longer sentence than would have been given had there been proper jury instructions.  We affirm.

## II.  Procedural History

Schwalbach pled guilty to evading arrest with a vehicle and unauthorized use of a motor vehicle; he pled true to the allegations in the repeat offender notice but not true to the deadly weapon allegation.  He requested that a jury assess his punishment.

The jury sentenced him to eleven-and-a-half years' confinement for the evading arrest offense, two years' confinement on the unauthorized-use-of-a-vehicle offense, and found the deadly weapon allegation true. [2]

## III.  Sufficiency

We will address Schwalbach's sufficiency challenge first.

## A.  Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S.

---

[2]We will review the evidence presented at the trial in our sufficiency analysis.

307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). When reviewing a deadly weapon finding, the evidence is sufficient if it shows that: "(1) the object meets the statutory definition of a dangerous weapon, Tex. Penal Code § 1.07(a)(17)(B); (2) the deadly weapon was used or exhibited 'during the transaction from which' the felony conviction was obtained; and (3) that other people were put in actual danger." *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (citations omitted).

## B. Analysis

An object that may not normally be considered a deadly weapon may become one depending on the manner of its use during the commission of an offense, regardless of intent. *Thomas v. State*, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). For example, a motor vehicle may become a deadly weapon if it is used in a manner that is capable of causing death or serious bodily injury, despite the intent of the driver to use the vehicle as a deadly weapon. *Drichas*, 175 S.W.3d at 798. Here, whether Schwalbach intended to hit the officer is inconsequential because the manner in which Schwalbach used the truck posed a danger to officers, pedestrians, and other motorists.

At approximately five p.m. on Monday, June 3, 2013, North Richland Hills Police Officers Michael Luther and Kevin Croft arrived at the RaceTrac on the corner of Rufe Snow and Trinidad in response to a stolen vehicle report. This RaceTrac is located on one of the busiest streets in the city, in a densely commercial area, with apartment complexes, businesses, and strip centers.

3

Officer Luther confirmed that when he arrived at the gas station it was busy and there were several vehicles at the gas pumps.

While investigating the stolen car report, Officer Luther noticed two white Ford F-250 pickups, accompanied by a male (who was later identified as Schwalbach) and a female, in the northeast corner of the gas station's parking lot.[3] After spotting Officer Luther, Schwalbach and his female companion jumped into one of the trucks. Officer Luther yelled at the driver, Schwalbach, to stop, but Schwalbach only looked at the officer and began backing out at a high rate of speed. Officer Luther testified that there were "quite a few" people in the parking lot, including cars at the pump behind Schwalbach as he was backing up.

Standing on the pavement, about fifteen to twenty feet directly in front of the vehicle, the officer drew his weapon, pointed it at Schwalbach, and told him to stop, but Schwalbach continued to back up. Officer Luther testified that when Schwalbach came to a stop he was in the process of trying to move from in front of the truck, and after stopping, Schwalbach looked at him, put the truck in gear, and accelerated. At the time Schwalbach accelerated, Officer Luther was still standing in front of the truck "in line with . . . the left headlight." The officer further testified that he was in fear for his life and that he had to step out of the way to avoid the truck hitting him. As the truck drove past, Officer Luther fired a shot

---

[3]Before he arrived at the gas station, Officer Luther received information from another officer that later that evening a man and a woman were expected to arrive at the RaceTrac in a couple of stolen white F-250 Ford pickup trucks.

4

and hit the front left tire. The truck continued to speed out of the RaceTrac parking lot, followed by both Officer Luther and Officer Croft in their patrol vehicles.

Officer Luther then detailed for the jury the route Schwalbach took after leaving the gas station as he and the other officer pursued him with lights and sirens. He described driving through a residential area with a speed limit of thirty miles an hour at speeds in excess of sixty miles an hour, and estimated that based on his own speed, Schwalbach would have had to been traveling in excess of sixty to seventy miles an hour. He testified that the pursuit took the officers through a busy intersection with cars coming from two directions. In addition, several cars were on the road and pulled over as the officers passed. Officer Luther testified that he followed Schwalbach off the main road and down a jogging trail before the truck finally came to a stop.

The State also showed the dashboard-camera footage from Officer Luther's vehicle. In the video, the jury can hear Officer Luther yelling at Schwalbach to stop, the revving of an engine, and then a gunshot. It then shows Officer Luther and Officer Croft leaving the parking lot and pursuing Schwalbach. The video shows the officers passing several cars on the street as well as passing through the red light at a busy intersection. The video then shows the officer turn down a jogging trail, drive past a jogger, and finally come to a stop.

The State also presented testimony from other officers involved in Schwalbach's pursuit and apprehension. Officer Croft testified that along the

5

route was a park. While he could not testify as to whether anybody was at the park at the time, he testified that it had playground equipment for small children, swings, a jungle gym, and a small duck pond where people often fished.

By backing out of the parking spot at a high rate of speed, Schwalbach endangered the people in the parking lot. He endangered Officer Luther by accelerating towards him while he was still in front of the vehicle; and he endangered the public by speeding down residential streets on a flat tire, at more than twice the speed limit, running through a red light at a busy intersection, and driving through a field and down a jogging trail where there were pedestrians. The jury could have found from any or all of these actions that he used the vehicle in a manner that was capable of causing death or serious bodily harm. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 2011 & Supp. 2014) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"); *see also McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (holding that it is not necessary for an actor to intend to cause death or serious bodily injury, rather "the placement of the word 'capable' in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force").

Viewed in the light most favorable to the prosecution, the evidence supports the conclusion that a rational trier of fact could have found beyond a

6

reasonable doubt that Schwalbach used a vehicle as a deadly weapon.  We overrule his third issue.

## IV.  Jury Charge

In his first and second issues, Schwalbach argues that there was harmful error in the court's punishment charge.

### A.  Standard of Review

"[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court."  *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).  In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.  *Id.*  If error occurred, whether it was preserved determines the degree of harm required for reversal.  *Id.*  Unpreserved charge error warrants reversal only when the error resulted in egregious harm.  *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006).  The appropriate inquiry for egregious harm is a fact specific one that must be performed on a case-by-case basis.  *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).  Schwalbach did not raise any objections to the punishment charge with the trial court.  Therefore, we review his complaint for egregious harm.

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence,

7

including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## B. Burden of Proof

In his first issue, Schwalbach argues that the trial court erred by failing to instruct the jury that the State had the burden to prove whether Schwalbach used a deadly weapon.

The court's charge should distinctly set forth the law applicable to the case. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007). The law places the burden of proof on the State in criminal cases, and it is proper for the court's charge to instruct the jury of this burden. *Toler v. State*, 546 S.W.2d 290, 294 (Tex. Crim. App. 1977). As such, jury charge error exists where the trial court omits an instruction on the burden of proof in the punishment charge. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000). Here, the punishment charge failed to instruct the jury that the burden of proof was on the State to prove the deadly weapon allegation, and failure to give such an instruction is

8

error subject to the *Almanza* harm analysis. *See Olivas v. State*, 202 S.W.3d 137, 145 (Tex. Crim. App. 2006) (holding it was error to omit beyond-a-reasonable-doubt instruction from jury charge on deadly weapon); *Mena v. State*, 749 S.W.2d 639, 642 (Tex. App.—San Antonio 1988, pet. ref'd) (holding that it was error not to assign the burden of proof in the jury instructions to the State).

### 1. Jury Charge as a Whole

It is not reversible error to omit a specific instruction placing the burden of proof on the State if the charge, when read as a whole, adequately informs the jury on the issue of the burden of proof. *Humphries v. State*, 163 Tex. Cr. R. 601, 295 S.W.2d 218, 220 (1956); *Simpson v. State*, 709 S.W.2d 797, 799 (Tex. App.—Fort Worth 1986, pet. ref'd).

Here, the jury charge read,

> You are instructed that you must determine whether the allegations set out in the Deadly Weapon Finding Notice are "true" or "not true." If you find beyond a reasonable doubt that the allegations in the Notice are "true", you will so state "We do" in answer to the Special Issue. If you do not find beyond a reasonable doubt that the allegations in the Notice are "true", or if you have a reasonable doubt thereof, you will so state "We do not" in answer to the Special Issue.

This instruction has been held to be a sufficient charge on the burden of proof. *Glascow v. State*, 50 Tex. Cr. R. 635, 100 S.W. 933, 936 (1907) (holding that there was no reversible error where the jury charge instructed the jury that "they must believe the defendants guilty beyond a reasonable doubt, and find them guilty beyond a reasonable doubt" but failed to instruct the jury that the burden was on the State); *see also Simpson*, 709 S.W.2d at 800 (holding that there was

9

no reversible error when the trial court, over the appellant's objection, failed to instruct the jury that the burden of proof was on the State but correctly instructed the jury as to the measure of proof that is required for a conviction); *Braziel v. State*, No. 08-02-0016-CR, 2004 WL 1535494, at *3 (Tex. App.—El Paso July 8, 2004, no pet.) (not designated for publication) (holding that the trial court did not err in refusing the requested instruction on the burden of proof where the instructions contained a beyond a reasonable doubt instruction).

Here, while the jury instruction did not specify who carried the burden of proof, it correctly identified the measure of proof required to find the deadly weapon allegation true. Therefore, any harm from the instruction's omission is removed or lessened by the jury charge as a whole.

### 2. State of the Evidence

Under the second factor of the *Almanza* egregious harm test, we consider the weight of the probative evidence and the contested issues. 686 S.W.2d at 171. Egregious harm does not result from omitting a burden of proof instruction in the jury charge when the evidence presented to the jury would support a finding in accordance with the appropriate burden of proof. *See Olivas*, 202 S.W.3d at 147–48. For example, there is no egregious harm if the issue is uncontested or if the State presented sufficient evidence to support a jury finding beyond a reasonable doubt. *See id.*

Here, as discussed in our sufficiency analysis, the evidence was sufficient to support a finding of beyond a reasonable doubt. Therefore, the error in omitting the burden of proof instruction was not egregious. *Id.* at 149.

### 3. Counsel's Arguments and Other Relevant Information

In addition to looking at the jury charge as a whole, we may also look to counsel's arguments and other relevant information in the record. *Almanza*, 686 S.W.2d at 171.

During voir dire, defense counsel went over the State's burden of proof as it applied to the deadly weapon charge, stating,

> All right. We won't have to worry about burdens of proof other than the issue that you're going to have to resolve is whether or not the object alleged was used as a deadly weapon. The burden is still the same as is though you were determining guilt or innocence -- I'm sorry -- guilty or not guilty.
>
> Excuse me. Okay. It's beyond a reasonable doubt. I'm not going to talk -- spend a lot of time on that, but it's the highest burden that is allowed in our court system.
>
> . . . .
>
> [Discussion of lower burdens of proof] Okay. So even above that, we have beyond a reasonable doubt.
>
> There's no definition in the State of Texas. It is whatever you as a juror say it is. And so what I want to make sure that's important -- that's important for me that y'all know that is that the main elements that on or about a certain date in Tarrant County, Texas, Terry Schwalbach did then and there, knowingly and intentionally, all that stuff, operate a motor vehicle without the effective consent of the owner, and then the elements for evading. All that. All of those are going to be conceded. They're going to be stipulated to. Okay. The one thing that's not going to be stipulated is deadly weapon, which, as we talked about, in that object's -- in its use, it's [sic]

11

intended use, was it used as a deadly weapon in a way that could cause serious bodily injury -- or I'm sorry -- not serious -- just bodily injury or death. Okay.

. . . .

. . . But we don't have to do anything. The burden -- when I say the burden of proof remains with the State, that means with these good experienced folks right here. Okay. And so it's their burden. You as the jury have to decide have they met that burden[.]

Then, during closing argument, the State touched on the fact that it was its burden to prove the use of a deadly weapon:

[Prosecutor]: So what this all tells you is *we've proven exactly what that special issue asked you*, and that is in -- did the defendant in the way that this was used or the way that he intended it to be used, was it capable of causing death or serious bodily injury? [Emphasis added.]

Based on the record before us, we conclude that despite the omission, there was no egregious harm from the jury charge error. *See Olivas*, 202 S.W.3d at 148 (holding that arguments from counsel were sufficient to inform the jury that it could not answer the deadly-weapon issue affirmatively unless it found that the State had proved its case "beyond a reasonable doubt"); *see also Mena*, 749 S.W.2d at 644 (holding that failure to include the burden of proof in the jury charge was harmless error when during both voir dire examination and closing arguments the jurors were told that the burden of proof was on the State). We overrule Schwalbach's first issue.

12

## C. Elements of the Charge

In his second issue, Schwalbach asserts that the jury charge failed to give the jury the information it needed to determine whether a deadly weapon was used during the commission of the offense because the jury charge failed to set out the elements of the underlying charge in which he was accused of using a deadly weapon.

Assuming, without deciding, that there was error, it was harmless. The State made clear to the jury the elements of the crimes to which Schwalbach pled guilty during voir dire, discussing what the State would normally have to prove. After the jury was seated, the prosecutor read each indictment to the jury, and Schwalbach pled guilty to each offense and not true to the deadly weapon paragraph that followed the evading arrest indictment.

Furthermore, in closing arguments the prosecutors clarified how Schwalbach used the truck as a deadly weapon, stating,

> The deadly weapon issue is a true. It's a deadly weapon when you use it like that. When you try to run somebody down with it, it's a deadly weapon. When you're racing through civilians in a gas station down the streets, running across the fields like that. You saw the jogger on the side of the jogging trail. People were in danger. It's a deadly weapon in his hands. It's a true.
>
> . . . .
>
> . . . [Y]ou heard Officer Luther testify that he was probably going, I don't know, 60 or 70 . . . in a residential area that's 30. And he said, based on his experience, the defendant had to be going at least that fast in order to gain that much ground on him. So now you've got him intentionally driving down this residential street that's under construction, and you can see on the video there's a couple of

13

vehicles that he went around as he went down that first street, folks that had to pull over.  He's doing this on a tire that's been shot out.  It's losing air. . . . Then he gets up in this intersection where you can see where the two officers almost collided with each other, and you can see cars going back and forth.

Based on the record before us, we conclude that Schwalbach did not suffer egregious harm from any omission of the offense's underlying elements, and we overrule his second issue. [4]

## V.  Conclusion

Having overruled Schwalbach's dispositive issues, we affirm the trial court's judgment.

/s/ Charles Bleil
CHARLES BLEIL
JUSTICE

PANEL:  WALKER and MEIER, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 12, 2015

---

[4]Having overruled both of Schwalbach's jury charge complaints, we need not reach Schwalbach's fourth issue.  *See* Tex. R. App. P. 47.1.

14